## Macky *versus* Dillinger.

73    85<br>22 SC ⁵586

1. Dillinger consigned goods to Moorehead for sale; he pledged them for a loan to Macky, who knew they were owned by Dillinger: *Held*, that under the Factor Act of April 14th 1834, Dillinger could recover in replevin without tendering repayment of the loan.

2. Moorehead had advanced to Dillinger on the goods before pledging them; Dillinger demanded them from Macky, who declined to deliver without payment of his loan, saying nothing of Moorehead's advance. Dillinger might recover the goods without payment of the advance.

3. Macky gave a property bond and retained the goods; *Held*, that the amount due on the advance might be recouped from Dillinger's damages.

4. When a party declines to accept payment or performance, except in a way to which he is not entitled, he cannot insist that the action is prematurely brought.

5. There is no set-off in replevin, but if the goods are subject to a charge, it can be enforced by way of recoupment.

6. The Factor Act construed.

January 14th 1873. Before READ, C. J., AGNEW, WILLIAMS and MERCUR, JJ. SHARSWOOD, J. at Nisi Prius.

Certificate from Nisi Prius: Of January Term 1869, No. 397.

This was an action of replevin, brought by S. Dillinger & Son against Samuel Macky & Co., for 40 barrels of whiskey, of the value of $2500. The defendants gave a claim-property bond and retained the goods; they pleaded "non ceperunt" and "property in themselves."

The plaintiffs were manufacturers of whiskey in Westmoreland county, and in February 1869 consigned to Moorehead & Co., who were commission merchants, 50 barrels of whiskey, to be sold for plaintiffs at $1.60 per gallon. Moorehead & Co. sold 10 barrels of the whiskey, and pledged the remaining 40 barrels, with other goods, to the defendants to secure a loan of $3700, made by them to him.

The cause was tried March 21st 1871, before Agnew, J.

J. L. Dillinger, one of the plaintiffs, testified that he called on defendants before suit, and demanded the whiskey; they refused, saying there was an order against it in favor of Craycraft & Co., and that they had made an advance of $3700 on different lots of goods including this; that they were willing to deliver the whiskey to witness, upon paying the advances they had made, and getting the order of Craycraft & Co. out of the way.

The defendants called G. Raphael, their book-keeper, who testified that the whiskey was received as the property of Moorehead & Co., and they knew of no one else being the owner; the whiskey

[Macky *v.* Dillinger.]

was sold, the account-sales made out to Moorehead & Co., June 10th 1869, and the net proceeds credited to them; the whiskey came into plaintiffs' hands in the usual course of business, and was so treated. The proceeds of the sale of the whiskey were $2002.13 gross; of all the goods $5333.21, gross off $538.65; the freight on *all* the goods was $117.36.

When the whiskey was received by defendants, Moorehead & Co. gave them the following paper :—

"Received and borrowed from Samuel Macky & Co., $3700, for which we hereby hypothecate the following described goods and merchandise, to secure the payment within 30 days of the aforesaid $3700, viz. : 44 barrels of Moss & Fox whiskey, 40 barrels of S. Dillinger & Son whiskey, and ten barrels of Dillinger & Stevenson whiskey. The whole 94 barrels being valued at and covered by their policy of insurance for $6500.

"We hereby authorize the said Samuel Macky & Co. to sell the said whiskey, or any part thereof, in default of the payment of the aforesaid loan at its maturity.

Philada., Feb. 13th 1869.                    MOOREHEAD & Co."

The order in favor of Craycraft & Co. was as follows :—

"Philadelphia, February 24th 1869.
Messrs. S. Macky & Co., 1232 Market St., Philadelphia :

Please hold subject to the order of B. B. Craycraft & Co., the balance of whiskey in your hands, received for account of Moorehead & Co., Craycraft & Co. paying advance and charges.

MOOREHEAD & Co."

They called J. R. Moorehead, of the firm of Moorehead & Co., who testified : "I received 40 barrels of whiskey from plaintiffs on consignment to sell, and advanced on them about $1500 to the plaintiffs; defendants advanced $3700 on this and other property."

On cross-examination witness said, "I told defendants that the 40 barrels were consigned to us by the plaintiffs, that their limit to us was $1.60 per gallon; defendants might sell at that price and I would divide the commissions with them; the advance of $1500 was on 50 barrels; I had sold 10 barrels to Geisinger & Co.; this sale amounted to nearly $700; this would have been a credit on the $1500."

S. Macky, defendant, testified, That the goods had been received in the course of their business, and he thought Moorehead & Co. had a right to dispose of them; the plaintiffs' mark was on the barrels. When Dillinger called he seemed to think he would take the amount over defendants' advances; witness understood plaintiff had no claim but for the excess.

The parties each submitted a number of points; the questions decided will however sufficiently appear in the charge, and in the opinion of the Supreme Court.

[Macky *v.* Dillinger.]

The court charged :—

" This case falls within the Factor Law of 14th April 1834. The plaintiffs manufactured the whiskey in dispute and consigned it to Moorehead & Co. of this city for sale, limiting the sale at $1.60 a gallon. Moorehead & Co. pledged the 40 barrels of whiskey in dispute with other property to secure a loan of $3700, raised from Macky & Co., on the 13th February 1869. These are facts about which there is no dispute. There is evidence tending to show that Moorehead & Co. advanced $1500 to the plaintiffs on a lot of 50 barrels, of which the 40 barrels are a part, and sold the 10 barrels for about $700, which would reduce the advance to about $800. There is also evidence tending to show that the defendant knew at the time of the loan of the $3700, that the 40 barrels in dispute had been consigned by the plaintiffs to Moorehead & Co. for sale. Mr. Moorehead testifies that he told Mr. Macky of the consignment, and offered to divide the commissions on the sale with him.

" These facts are. for the jury to decide on the weight of the evidence.

" The first and principal question of fact to be decided by the jury is whether Macky, the defendant, knew at the time he took the 40 barrels of whiskey in pledge for the payment of the $3700,. that the whiskey was held by Moorehead & Co., on consignment from the plaintiffs for sale by them as the factors of the plaintiffs.

" If you find that Macky did not know of the plaintiffs' ownership of the whiskey, he would be entitled to hold the whiskey under the Factor Act as though it were the property of Moorehead & Co., for the loan made upon the pledge of it by Moorehead & Co., and the plaintiffs having declined to pay Macky's advance upon it cannot recover.

" In that case Macky would be an innocent holder, and could retain the whiskey on the terms of the writing of the 13th February 1869. But if you find that the defendant did know of the consignment and ownership of the plaintiffs, the defendant would under the act have no greater right to retain the whiskey than Moorehead & Co. would ; that is until their advance was refunded by the plaintiffs, or the balance due on the advance.

" The Factor Act enables the plaintiffs to follow their property into the hands of the defendant, as pledgee of the whiskey, upon tendering the advances they have received from Moorehead & Co. To this extent, therefore, the defendant taking the whiskey in pledge with knowledge of plaintiffs' right, had a right to retain the whiskey. But if the defendant with this knowledge of the plaintiffs' ownership at the time of the loan of the $3700 to Moorehead & Co., upon demand being made by the plaintiffs, refused to deliver the whiskey unless the $3700 were paid, and unless the order from Craycraft & Co. was lifted or put out of the way by the

[Macky *v.* Dillinger.]

plaintiffs, this refusal insisting on terms not binding on the plaintiffs, would be a waiver of the tender of the advance or balance of advance made by Moorehead & Co. on the whiskey to the plaintiffs. In that case the defendant having no right to demand these conditions, can now be permitted only to recoup the advance of Moorehead & Co. (or the balance unpaid) from the damages. But the right of the defendant to recoup the advance of Moorehead & Co. from the damages is, I think, a fair inference from the Factor Law, especially the latter part of the 4th section of the Act of 14th April 1834.

"If you find a verdict for the plaintiffs under these instructions, you will assess the damages of the plaintiffs at the value of the whiskey at the time of the demand by the plaintiffs, after allowing by way of recoupment the sum due by the plaintiffs to Moorehead & Co. for advances, with interest from the time of demand."

The Factors' Act of April 14th 1834, Pamph. L. 375, 1 Br. Purd. 664, is as follows:—

"Sect. I. Whenever any person intrusted with merchandise and having authority to sell or consign the same, shall ship or otherwise transmit the same to any other person, such other person shall have a lien thereon—

"For any money advanced * * * on the faith of such consignment, to or for the use of the person in whose name such merchandise was shipped or transmitted. * * *

"Sect. II. But such lien shall not exist for any of the purposes aforesaid, if such consignee shall have notice by the bill of lading or otherwise, before the time of such advance or receipt, that the person in whose name such merchandise was shipped or transmitted is not the actual owner thereof.

"Sect. III. Whenever any consignee or factor, having possession of merchandise, with authority to sell the same, * * * shall deposit or pledge such merchandise, or any part thereof, with any other person, as a security for any money advanced * * * by him on the faith thereof; such other person shall acquire by virtue of such contract the same interest in and authority over the said merchandise, as he would have acquired thereby if such consignee or factor had been the actual owner thereof: *Provided*, That such person shall not have notice by such document or otherwise before the time of such advance or receipt, that the holder of such merchandise or document is not the actual owner of such merchandise.

"Sect. IV. If any person shall accept or take such merchandise from any such consignee or factor, in deposit or pledge for any debt or demand previously due by or existing against such consignee or factor, and without notice as aforesaid, and if any person shall accept or take such merchandise from any such consignee or factor, in deposit or pledge, with notice or knowledge that the person making such deposit or pledge is a consignee or factor only, in

[Macky *v.* Dillinger.]

every such case the person accepting or taking such merchandise or document in deposit or pledge, shall acquire the same right and interest in such merchandise as was possessed or could have been enforced by such consignee or factor against his principal at the time of making such deposit or pledge, and no further right or interest.

" Sect. V. Nothing in this act contained shall be construed or taken—

" I. To affect any lien which a consignee or factor may possess at law, for the expenses and charges attending the shipment or transmission and care of merchandise consigned, or otherwise intrusted to him.

" II. Nor to prevent the actual owner of merchandise from recovering the same from such consignee or factor, before the same shall have been deposited or pledged as aforesaid, or from the assignees or trustees of such consignee or factor, in the event of his insolvency.

" III. Nor to prevent such owner from recovering any merchandise so as aforesaid deposited or pledged, upon the tender of the money * * * so advanced or given to such consignee or factor, and upon tender of such further sum of money, * * * if any, as may have been advanced or given by such consignee or factor to such owner * * *

IV. Nor to, prevent such owner from recovering from the person accepting or taking such merchandise in deposit or pledge, any balance or sum of money remaining in his hands as the produce of the sale of such merchandise, after deducting thereout the amount of money * * * so advanced or given upon the security thereof as aforesaid."

The verdict was for the plaintiffs for $2545. The defendants had the case certified to the court in banc, and assigned nineteen errors to the charge of the court and the answers to the points.

*S. Hood* and *Porter*, for plaintiffs in error.

*G. S. Selden*, for defendants in error.

The opinion of the court was delivered, January 27th 1873, by
AGNEW, J.—This was an action of replevin for forty barrels of whiskey. Dillinger & Son were distillers in the western part of the state, and consigned the whiskey to Moorhead & Co., of Philadelphia, for sale. Moorhead & Co. pledged the whiskey to Macky for the repayment of a loan of $3700. The instrument of hypothecation embraced other whiskey pledged for the same loan, including ten barrels testified to belong to Moorehead & Co. themselves. On the trial, James R. Moorhead, who transacted the business, testified that he had told Macky that the forty barrels of whis-

[Macky *v.* Dillinger.]

key were consigned to them by Dillinger & Son, for *sale* at a limit of one dollar and sixty cents a gallon. The question of Macky's knowledge of the ownership of the whiskey by Dillinger & Son, was submitted to the jury, with the instruction that if he did not know of the consignment by Dillinger & Son to Moorehead for *sale*, when he took the hypothecation, that the plaintiffs could not recover. The verdict establishes the fact of Macky's knowledge. This, therefore, raised the principal question in the cause, the defendant claiming the right of a consignee for sale, to pledge the goods for a loan to himself, made even with a knowledge that the consignee was not the owner, and had no authority from the owner to hypothecate. In Lausatt *v.* Lippincott, 6 S. & R. 386, it was said by Chief Justice Tilghman, " that a factor cannot pledge the goods of his principal for his own debt, seems to be too well settled to admit of dispute." He regretted that this will put it in the power of the factor to deceive innocent persons who deal with him bonâ fide, and on valuable consideration, for he says, "it bears extremely hard upon persons who deal with a factor, without a possibility of knowing that the goods do not belong to him." The Revisers, who reported the Factors' Act, passed on the 14th of April 1834 (1 Br. Purdon 664), referred to this case in their report, and to the alteration of the common-law rule by the statute of 6 Geo. IV., c. 94, passed in the year 1825, which they took as the foundation of the Factors' Act reported by them. They say, also, that " the evil complained of by the Board of Trade of Philadelphia, and by the mercantile community in general, is, that consignees and factors authorized to sell the goods of their principal, and who are held out to the world as the owners thereof, have not power to pledge the goods in their possession, for advances made by persons who have every reason to believe that they are the actual owners." They then add, " now we would apply a remedy for this particular evil, but we think that it would not be prudent at present to go further, lest evils should be produced on the other side." In remarking upon the third section, they say " it is intended to protect all persons, who, in the ordinary course of business may have lent or advanced money to consignees or factors, authorized to sell goods of their principal, without knowledge that they were not the actual owners of the goods." " The phraseology of this section (the report adds) is designedly guarded, and we have thought it best to limit the power of factors more than we find it expressed in the statutes of England and New York, which we have alluded to."

We have been referred by the plaintiff in error to the case of Navulshaw *v.* Brownrigg, 13 Law and Equity Reports 262, in support of the right of Mr. Macky to take the goods in pledge for a loan, even with the knowledge of Moorehead & Co. being consignees for sale only. That case, however, is decidedly against

[Macky *v.* Dillinger.]

him, it being decided on the force and effect of the statute of 5th and 6th Victoria, ch. 39, which has not been adopted in this state. The Lord Chancellor states there the common-law rule, and the statute of 4 Geo. IV., ch. 83, and 6 Geo. IV., ch. 94, and commenting on the statute of 6 Geo. IV., said: "So that the statute enabled the agent as regarded third persons, to sell or pledge provided the persons with whom he pledged did not know that he (the person that pledged) was not the actual and bonâ fide owner of the property."

With these guides to the interpretation of the Factors' Act of 1834, it would not be difficult to arrive at its meaning, if the language were more doubtful than it is. But the language is clear. The pith of the act is contained in the first and third sections. But the second section and the proviso to the third section, expressly except the case of one having notice by the bill of lading document or otherwise, that the person in whose name the merchandise was shipped, or transmitted, or who is the holder, is not the actual owner thereof. The fourth section is equally explicit; for one who accepts a pledge for a pre-existing debt, without notice, or one who takes the pledge with notice, shall acquire the same interest only in the merchandise, as the factor himself had at the time of making the pledge. The purpose of the 4th section, say the revisers, was to reserve to the person taking on deposit, goods for a precedent debt, without notice, or for any debt with notice, of the person being only a factor, all the rights of the factor over the property as against his principals, which might be supposed to be impaired by the preceding section. The 5th section is also intended (they say) to prevent the preceding sections from operating injuriously to existing interests. An examination of the several clauses in the 5th section, bears out the intent as obvious in the clauses themselves, and furnishes at once the answer to the argument of the plaintiffs in error, which sought to give an extension to the pledgee's rights by these clauses, instead of the protection they are designed to give to existing rights of the owner as well as the factor. On the trial of the cause, the defendant, Macky, rested his case wholly upon his right to hold the whiskey for his entire claim of $3700. Neither at the time of the demand of the goods by Dillinger, nor on the trial, did he set up any claim for the advances made by Moorehead & Co., but the jury were instructed by the judge, that if they found Macky had notice of the ownership of the whiskey, they would still allow the defendant for the advances made by Moorehead & Co. to Dillinger & Co. on the whiskey, or whatever balance was unpaid by way of recoupment from the damages. It was insisted in the argument, that, although no claim was made for freight or storage, and no attention called to them, the judge erred, because the language of his charge would, in effect, restrict Macky's claim to the advances of Moorehead &

[Macky *v.* Dillinger.]

Co., and the sum of $117.36, contained in Macky's account of sales, as charges for freight, ought to have been allowed. But evidently, the language was not intended to lay restrictions on the extent of the recoupment. The whole subject of the charge was upon the right of Macky to hold the whiskey in pledge for the repayment of the loan of $3700, and when it was said, the defendant in that case, having no right to demand these conditions, can now be permitted only to recoup the advance of Moorehead & Co. from the damages, it is clear this was by way of contrast of these two aspects of the case, and not to limit the rights of Macky to any claim he could legally set up by way of recoupment. It was his own fault, therefore, if he did not claim the freight. But in fact, as the evidence stood, he had no such claim on this whiskey. The hypothecation shows, that Macky had taken three lots of whiskey in pledge, of which, the testimony proved, that ten barrels were the property of Moorehead & Co. The account of sales shows that the gross proceeds of the three lots amounted to $5333.26; and gross off, $538.65; of this gross, the $117.36 was the freight on the whole. Thus, by his own showing, the freight was paid by the charge in the account; while the ten barrels of Moorehead's whiskey were ample to pay all expenses. No attempt was made to prove how much, if any, of this charge for freight applied to the forty barrels of Dillinger & Son's whiskey, and besides this, Macky's knowledge of Dillinger & Son's ownership of the whiskey being found by the verdict, how can a charge for expenses incurred by Macky in the transfer and storage of the whiskey, as a pledge in violation of Moorehead & Co.'s authority, stand on a higher ground than the loan itself; viewed in any aspect, therefore, the charge, in this respect, did the plaintiff no harm.

The only question remaining which we need notice, relates to the tender said to be necessary. Macky refused to deliver the whiskey unless Dillinger & Son paid him the loan of $3700, and put the Craycraft & Co. order out of the way. In charging that this refusal, and insisting on terms not binding on the plaintiffs, would be a waiver of a tender of the advance made by Moorehead & Co., clearly the judge did not mean to say that it was a waiver of Macky's right to these advances, but only of a *tender* as an act precedent to a suit; the instruction following immediately, to allow Macky the advances by way of recoupment, proves this. The instruction was according to the general doctrine of tender, that when a party declines to accept payment or performance, except in a particular way, to which he is not entitled, he cannot insist that the action is prematurely brought. Macky would deliver the whiskey only on his own terms, and these terms the verdict shows he was not entitled to demand. This necessarily left his rights to be determined by this suit. Set-off does not exist in replevin, but when the goods are the subject of a lien or charge,

[Macky v. Dillinger.]

the charge upon them can be enforced by way of recoupment, for the charge is inseparable from the thing itself, and therefore, when the value of the thing is to be allowed in damages, the charge necessarily reduces the damages by way of a recoupment, in order to do justice to both parties. As to the order to Craycraft & Co., there was no evidence given to show that it had fastened upon the whiskey, by such a bonâ fide sale or pledge as would attach to the property, and enable Mackey to use the title of Craycraft & Co. to defend his possession.

We discover no error, and the judgment is therefore affirmed.