FRANK BERKEY v. E. LEFEBURE AND SONS, ET AL.,
Appellants.

**Rescission of contract.** Unless a subsequent contract in terms re-
1   scinds a former one, or the earlier one is entirely covered by the
latter, or they are so inconsistent that neither can stand, there is
not a rescission of the former.

**Same.** In the absence of a specific agreement operating to rescind a
2   contract, resort must be had to the entire transaction to determine
the real intent of the parties in respect thereto.

**Rescission:** PLEADINGS. Where a petition recites facts which in effect
3   amount to a rescission of a contract, it is sufficient, although there
is no specific allegation to that effect.

**Amendments:** APPEAL: MOTION TO STRIKE. An amendment making a
4   plea of rescission more specific may be filed during the progress of
the trial without formal leave of court; and when considered in

the submission of the case, an amendment to the abstract contain-
ing the same, on appeal, is not subject to a motion to strike.

**Sales:** RESCISSION. The purchaser of a stallion under an agreement
that upon a failure of the warranty he might return the horse
and get another, is entitled to a rescission of the contract on
refusal of the seller to comply with the provision.

**Rescission:** DAMAGES. Where the purchaser of a stallion rescinds for
a breach of warranty, he can recover for its keep and expense
of returning him, no greater sum than claimed in the petition.

*Appeal from Linn District Court.*— HON. W. N. TREICH-
LER, Judge.

TUESDAY, MAY 10, 1904.

On the 12th day of March, 1901, the plaintiff bought a
stallion of the defendants Lefebure & Sons for $1,300. He
paid $20 of the purchase price at the time, and there was
then executed to him the following written contract of sale
and warranty:

Said Lefebure & Sons have this day sold to said second
parties a stallion described as follows:   The Belgian Draft
Stallion Samson 834 (13006), for the consideration of ·
$1,300 dollars, to be paid as follows: $20 down and $1,280
upon delivery of stallion sound and in good condition at
second parties' farm.   Said Lefebure & Sons hereby war-
rant that said stallion will get in foal sixty per cent. of the
mares he properly and carefully serves during the season of
1901, provided he hereafter contracts no disease, and is kept
in a proper careful manner as a breeding stallion, and pro-
vided that such mares are regularly returned for service
during the season, and all reasonable efforts and precautions
are taken by said second parties and the owners of such
mares to get them with foal by said stallion.   If, after using
the season of 1901, ending October 15th, 1901, he proves not
to be a foal getter as above stated, then said second parties,
upon returning said stallion to said Lefebure & Sons, at their
stables at Fairfax, Iowa, by February 15th, and not before
January 1st, 1902, and provided he is substantially in the
same condition in health and flesh, and sound in every re-

spect as said Lefebure & Sons represent him to be, may receive in exchange therefor from said Lefebure & Sons anther stallion held by them for sale, same to be as sound and in good condition and of like value.

The horse was delivered at the plaintiff's farm, and a check given for the balance of the purchase price, but very soon thereafter the plaintiff became convinced that the horse was not sound, and on the 20th day of March he wrote to the defendants as follows:

On looking the horse over after the man was gone, I find that he has a spavin or jak. Now that is not what the horse was represented to me. The contract says that he is to be sound and all right, and he falls short a long ways. I might have thought that it was unknown to you had not the shoe been fixed to keep him from showing lameness. He also seems to be heavy, but have not decided that for sure. Now I do not want more than what is right, and if you will adjust the matter in a fair way we will get along all right. Let me hear from you soon.

There was no written response to this letter, but a few days later one of the defendants went to the plaintiff's farm, where the parties finally agreed upon an adjustment of the difficulty, the plaintiff paying the defendants $1,000 in cash and executing and delivering to them a note in the following language:

Two years after date, I promise to pay to the order of E. Lefebure, at the Home Savings Bank, at Des Moines, Ia., One hundred dollars ($100) with interest at the rate of 6 per cent. per annum from date, provided a certain stallion named Samson, sold to me, is in good serviceable condition as a stallion should be, and sound as he now is, at that date. If not in such condition then this note to be void.

The plaintiff thereupon kept the horse and the contract of sale and warranty originally given to him. Within the time specified in the contract, the plaintiff took the horse to the defendants' barn in Fairfax, and requested another horse in exchange, in accordance with the contract, claiming that

he had failed to prove a foal-getter, and that the warts on the scrotum had increased in number and size. The defendants refused to make any exchange, whereupon the plaintiff refused to keep the horse, left him at the defendants' barn, and started away. The defendants followed him with the horse, however, and again refusing to keep him, threatened to turn him loose in the highway if the plaintiff did not take charge of him; the plaintiff thereupon took the horse back to his farm, and soon thereafter began this suit to recover the price paid for him and certain damages. There was a trial to a jury, and a judgment for the plaintiff. The defendants appeal.— *Affirmed.*

*Voris & Haas* and *C. T. Jones,* for appellants.

*Read & Read,* for appellee.

SHERWIN, J.— The question of first importance in this case is whether the agreement of the 29th day of March, partly oral and partly expressed in the note then executed 1. RESCISSION    to the defendants, superseded the written con-
OF CONTRACTS.   tract of warranty made when the horse was purchased. It is contended by the appellants that it did, and that the contrary finding by the jury is not supported by sufficient evidence. It is also said that the court should have construed the transactions of March 29th as abrogating the earlier contract. The note does not in terms supersede the original contract with respect to the warranty of the horse as a foal-getter, nor as to the number or effect of the warts on the scrotum. To effect a rescission of the original contract, it was necessary that there be a meeting of the minds of the parties. This is elementary, and unless the subsequent contract in terms purports to rescind or modify it, or unless the entire subject-matter of the earlier agreement is covered by the latter, or the latter is so inconsistent with the former that both cannot stand, there is no rescission of the former. 3 Am. & Eng. Enc. of Law (1st Ed.) 891;

*Brown v. Curtis,* 111 Iowa, 542. The note contains no pro-
vision inconsistent with the warranties as to foal-getting and
as to the warts, unless it be held that its provision that the
horse " is in good serviceable condition as a stallion should
be " referred to such warranties, and, considered alone, such
meaning cannot be given to it.

To determine, then, the real intent of the parties, we
must look to the entire transaction, and determine there-
from whether a new agreement was made which in effect ab-
2. SAME.        rogated the original one. In the appellants'
opening argument it was claimed that there had been a sub-
stitution of contracts by agreement, but in their additional
brief and argument filed after the appellee argued, they
claim that the new agreement abrogated the old. But we
are satisfied that neither contention is sound or sustained by
the record. No complaint was made of the horse except as
to his soundness, and that was the only matter considered
when the final settlement was made. His value depended
entirely upon his usefulness as a foal-getter, and that ques-
tion could not be determined by inspection or by physical
examination, nor could it be determined until sufficient time
had elapsed to test the matter by results. This was under-
stood by all parties, because they were all horsemen, and it
is not reasonable to suppose that the plaintiff intended to
waive this important warranty in the settlement of the dif-
ferences growing out of the supposed unsoundness of the
horse, as indicated by the condition of his leg.

The original petition did not specifically plead a rescis-
sion of the contract, and that the horse was thereafter kept
as the property of the defendants, and it is urged that the
3. RESCISSION:        question of rescission was not in the case. The
pleadings.        warranty with respect to foal-getting and the
warts, and a breach thereof, was pleaded, however, and it
was further alleged that the horse had been returned to the
defendants and another one demanded, a refusal to comply
with said demand, and that there had been a failure of con-

sideration to the plaintiff's damage in the sum paid for the horse, together with the expense of returning and keeping him after the defendants' refusal to comply with the contract. The petition in effect pleaded a rescission of the contract, and this was all that was necessary.

Notwithstanding this, however, the plaintiff filed an amendment thereto at the close of the evidence, making the plea specific. But it is urged that this amendment should not be considered, because it was filed without formal leave of court. This was not necessary; it was filed in open court during the progress of the trial, and was recognized by the court and embodied in its instructions. The issue was therefore properly presented to the jury, and the motion to strike the amended abstract which sets out this amendment is overruled.

4. AMENDMENTS: appeal; motion to strike.

Again, it is said that the plaintiff had no right to rescind the contract in any view of the case; that his remedy was to return the horse and get another one in exchange therefor, and that upon the defendants' refusal to make such exchange, the plaintiff's remedy was a suit for damages, measured alone by the difference between the price paid and the actual value of the horse. Aside from the question whether the agreement for an exchange of horses gave the plaintiff the option to exchange or not, as he might elect, it is clear that upon a refusal by the defendants to comply with the agreement to exchange, he was entitled to rescind. *Padden v. Marsh,* 34 Iowa, 522; *Park et al. v. Richardson & Boynton Co.,* 81 Wis. 399 (51 N. W. Rep. 572); Bishop on Contracts (enlarged Ed.) section 827.

5. SALES: rescission.

The sixth instruction given by the court was based upon the theory of rescission, and was correct. It follows that the instruction asked by the defendant, stating that a rescission was not pleaded, was rightly refused.

What has heretofore been said disposes of the contention that the motion for a new trial should have been granted

for the same reason. The evidence was sufficient to establish a rescission. The plaintiff complied with the terms of the contract to the letter, and did everything that could be done under the circumstances to protect himself; the defendants refused to take the horse back absolutely, or to exchange another horse for him; and in such circumstances the plaintiff is clearly entitled to rescind.

The stallion was warranted to get with foal sixty per cent. of the mares properly and carefully served, provided he was kept in a proper manner, the mares regularly returned, and all reasonable effort and precaution taken by the plaintiff and the owners of the mares to get them with foal. Instructions 5 and 6 covered this question fully and fairly, and contained the substance of the request made relative thereto.

We find no error in the rulings upon the introduction of evidence for which there should be a reversal.

The claim that the plaintiff was awarded an excessive amount for keeping and returning the horse seems to be just. The petition only claimed $80 for these items, and no more than that amount can be recovered for them. The jury allowed the plaintiff $131 for the two items. This is self-evident, because there was no dispute as to the price paid for the horse, nor as to the time the contract was rescinded.

6. RESCISSION: damages.

The judgment is reduced $51, and as thus modified, it is *affirmed*.