[No. 20295. Department Two. February 1, 1927.]

W. N. DOUB, *Respondent,* v. JAMES P. RAWSON *et al.,*
*Appellants.*[1]

[1] SALES (177)—CONDITIONAL SALES—OPERATION AND EFFECT AS TO
THIRD PERSONS—RIGHTS OF ASSIGNEE OF VENDOR. A conditional
sales contract of an automobile being non-negotiable, the as-
signee takes it subject to all defenses against the assignor; and
the vendee's failure to insert provisions giving notice of a
separate agreement that the payments could be made by ad-
vertising service does not estop the vendee from asserting the
right to make such payments in service, as against an innocent
assignee for value.

[2] SAME (177). A notice printed at the bottom of a conditional
sales contract, to the effect that all payments must be made
at the office of D. & Co., is not such a positive declaration of
an intent to assign the contract as to require the vendee to take
some affirmative action to prevent the vendor from perpetrating
a fraud in assigning the contract to a *bona fide* purchaser
ignorant of defenses.

Appeal from a judgment of the superior court for
Pierce county, Teats, J., entered April 17, 1926, upon
findings in favor of the plaintiff in an action on con-
tract, tried to the court. Reversed.

*Earl V. Clifford,* for appellant.
*Rex S. Roudebush,* for respondent.

ASKREN, J.—On January 12, 1926, the defendant
Rawson, a newspaper publisher of the city of Puyallup,
purchased from the Everhart Nash and Ajax Motor
Company, of the same place, an Ajax automobile, for
the sum of $1,423.12. A credit of four hundred dollars
was allowed for a used automobile owned by him, and
the balance was agreed to be paid at the rate of $56.84
per month. A printed form of conditional sale agree-

[1]Reported in 252 Pac. 920.

ment was signed by the parties, calling for the payments mentioned. In the body of the instrument is a promissory note for the amount due. At the time of the sale, it was agreed as a consideration thereof that the deferred payments should be paid by advertising at a certain specified rate, to be run in the defendant's newspaper, the Puyallup Herald, within eighteen months from the date of the sale. A separate contract embodying this provision was typewritten upon a separate sheet of paper and signed by both parties. The conditional sales agreement contained no reference to the contract for advertising. Within a few days thereafter, the automobile company, without notification to Rawson, sold and assigned its rights under the conditional sales contract to the plaintiff, W. N. Doub, who is engaged in financing automobile paper in the city of Tacoma.

Everhart shortly thereafter left the city. When the payments became due, Doub demanded payments as provided in the contract. Rawson demanded that the payments be taken out in advertising as required in the separate contract. Upon failure to agree as to their rights, Doub elected to declare a forfeiture, and brought a replevin action to possess the automobile, and the car was taken by the sheriff and delivered to him.

To the complaint alleging failure to pay, Rawson set up the written contract which specifically provided that the automobile was to be paid for in advertising. To this defense the plaintiff pleaded estoppel and alleged he had no notice of the separate contract.

Upon the trial, it affirmatively appeared that the conditional sales agreement and the advertising contract were prepared and signed at about the same time; that Rawson had no notice of the sale to Doub,

and he, in turn had no notice of the advertising con-
tract.

[1]   The trial court held that Rawson was estopped
to set up and claim under the advertising contract.
The basis of this estoppel appears, from the memoran-
dum decision, to be that Rawson was negligent in not
inserting something in the conditional sales contract
calling attention to the fact that the payments were
to be made with advertising, inasmuch as, at the ex-
treme bottom of the conditional sales agreement, there
appear these words: "All payments must be made at
office of W. N. Doub & Co., Inc., 305 Rust Bldg., Tacoma,
Wash." which the court thought would indicate that
the contract would undoubtedly be assigned.

It is conceded by respondent that, under the law,
when a simple contract such as this one is assigned,
the assignee takes it subject to such defenses as would
have been available against the assignor.   Our prev-
ious decisions are authority for this contention.
*University State Bank v. Bremerton,* 86 Wash. 261,
150 Pac. 439; *Paul v. Vancouver,* 89 Wash. 331, 154
Pac. 453.   There can be no question then, but what the
defense urged by Rawson was substantiated and should
have been upheld by the trial court, unless Rawson has
estopped himself to assert this right.

It is difficult for us to see how the failure of Rawson
to insert some provision in the conditional sales con-
tract regarding the advertising contract is negligence,
or amounts to an estoppel in law.   It is true, as respond-
ent contends, that if he had inserted such a provision it
would have been notice to the finance company.   But
he was not required to give that notice.   He was deal-
ing with a paper which, under the law, was non-negoti-
able, and any person who took it by assignment was
purchasing only that right which his assignor had.

The trial court seemed to think that it was a case of two innocent persons suffering, and that the one should bear the loss whose action made the loss possible. But, even if it should be conceded that Rawson was negligent in not inserting a clause in the conditional sales contract, it must also be admitted that the finance company was negligent in purchasing a non-negotiable instrument without inquiry or investigation, when the slightest investigation would have revealed the fact that the advertising contract was in existence. Respondent argues that, because it paid full value without notice, it should be protected; but this is to grant the assignee of non-negotiable paper the same rights that would be his were the paper negotiable.

[2] Nor can we conclude that the notice regarding payments printed at the bottom of the contract was such a positive declaration of an intent to assign the contract that Rawson was required to take some affirmative action to prevent Everhart perpetrating a fraud on the finance company. When parties are preparing non-negotiable paper they are not to be held to strict accountability regarding possible rights of third persons that may subsequently arise, for such persons stand in the shoes of their assignors.

The rule applying to estoppel in cases of this character has been well stated in 34 Cyc. 750, as follows:

"WAIVER AND ESTOPPEL. If the debtor promise the assignee of a chose in action to pay the debt to him, he cannot afterward avail himself in set-off of claims he may have against the assignor, as such a promise amounts to a waiver of any right of set-off he may have against the assignor. Similarly, the debtor by his conduct in inducing the assignee to believe that the obligation will be met, and that there is no defense thereto, may be held to have waived the right to avail himself of a set-off against the assignor in an action by the

assignee, particularly where the assignee was induced to purchase the obligation in consequence of representations by the obligor that he had no defense to it.''

Investigation of the decisions indicates that the doctrine is usually applied in those cases indicated by the text, i. e., where the debtor has, by affirmative action independent of the contract, led the assignee to believe that he makes no claim of set-off.

Reliance is placed by respondent on *National Bank of Tacoma v. Puget Sound Lum. Co.*, 104 Wash. 363, 176 Pac. 553, where the maker of a contract which called for ''spot cash'' payment for a certain raft of logs was not permitted to offset other claims between the parties as against the assignee of one of them, upon the ground that the maker was estopped to set the claim up. In that opinion we said:

''The law will hardly permit one who, notwithstanding prior transactions or prior contracts, enters into a specific contract for the immediate delivery of a specific article to be paid for in a certain amount in 'spot cash,' with specific deductions or discounts (implying that there were no other adverse claims), to repudiate his promise, after an assignment of the account, and assert a right under a contract which, if it had been insisted upon at the time, would have avoided the present controversy. 34 Cyc. 750.''

That language, used in its broadest sense, can hardly be helpful to appellant. The underlying basis of the decision is found in the fact that, notwithstanding the maker of the agreement had the right, and knew of its right, to claim certain set-offs under a contract then in existence, it voluntarily entered into a new contract for the specific raft of logs, for we held that the last agreement was ''a new contract with the delinquent party.''

If this were not the basis of the decision in that case,

it might be opposed to the rule of the case of *University State Bank v. Bremerton, supra,* where we held that the city of Bremerton, which had delivered to certain contractors a warrant for a specified amount which was later sold to the bank, could, as against the bank, set up counter-claims which it had against the contractor.

Our views herein are also in conformity with the case of *Paul v. Vancouver,* 89 Wash. 331, 154 Pac. 453, where we held that the city of Vancouver, by paying certain claims, became the owner of them by equitable assignment, and could offset the amount thereof as against an assignee of a public improvement contractor, but that the city took the claims subject to "any defense appellant might have against any of them . . . the same as any assignee thereof would have to take."

We are unable to escape the conclusion that Rawson was entitled to set off as against the assignee of the contract the same claims he could have urged against the assignor.

Because of the view adopted by the trial court, testimony offered by appellant, proper under its answer and affirmative defense, was refused, and we are unable to dispose of this case upon the record made, which fails to disclose a finding as to the value of the automobile, the cost to appellant of performing the advertising contract, and other matters necessary to a complete determination.

The judgment is reversed, with instructions to proceed in accordance with this opinion.

MACKINTOSH, C. J., PARKER, TOLMAN, and BRIDGES, JJ., concur.