APPLE, APPELLANT, v. EDWARDS ET AL., RESPONDENTS.

(No. 6,933.)

(Submitted September 23, 1932. Decided November 10, 1932.)

[16 Pac. (2d) 700.]

526

Mr. *Ralph J. Anderson,* for Appellant, submitted an original and a reply brief and argued the cause orally.

*Messrs. Cheadle & Baker,* for Respondents, submitted a brief; *Mr. C. E. Baker* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

On December 1, 1928, defendants executed and delivered to J. B. Fraser, doing business under the name of Northwestern Pure Bred Sow Company, their promissory note in the sum of $710, payable ten months from date, bearing 10 per cent. interest. The note was made payable to Northwestern Pure Bred Sow Company. It recited on its face that the consideration of the note was the purchase price of 10 Duroc Jersey sows and their pigs sold and delivered by the payee to the makers. It also recited that the title and ownership of the sows should remain in the payee until full payment of the principal and interest specified in the note. Upon failure to pay the principal or interest when due, or if the property was not properly cared for, if it was seized or levied upon, or if it was attempted to be sold or removed from Fergus county without the written consent of the payee, the latter might bring an action in claim and delivery for its recovery, or authorize the sheriff to take possession of it and sell it and apply the proceeds to the payment of the note. It provided that, if the sale did not bring sufficient to discharge the note, the balance remaining due should continue as an obligation of the makers, payable on demand.

This action is in claim and delivery to recover possession of the property described in the note, being the 10 sows and 69 pigs, or, in case delivery cannot be had, then its value, which is alleged to be $1,200.

The complaint alleges that before maturity and for value the note was sold to plaintiff, who is the owner and holder thereof and the owner of the property therein described; that the note is past due and unpaid, though payment has been demanded.

The answer admits the making of the note containing the provisions as alleged in the complaint, its nonpayment and demand, and that the pigs are worth the sum of $1,200, and denies the other allegations of the complaint. The answer

also contained what is designated an "affirmative defense in the nature of a cross-complaint and counterclaim," which on motion of plaintiff was stricken. The gist of the affirmative defense was as follows: That Fraser and R. D. Mulder were copartners doing business under the name of the Northwestern Pure Bred Sow Company; that defendants dealt with R. D. Mulder in making the note set out in the complaint; that they were induced to make the contract by false and fraudulent representations, in that Mulder falsely represented that the pigs were pure-bred Duroc Jersey pigs, entitled to registration papers, and that certificate of registration would be furnished; that defendants relied upon these representations in making the contract; that defendants made a part payment of $140 for the pigs by delivering other pigs agreed to be worth that amount; that, at the time of making the note and as a part of the same transaction, the Northwestern Pure Bred Sow Company signed a contract which is set out in the answer and which we shall hereafter for convenience call Exhibit A, by the terms of which the company agreed to furnish a certificate of registration and an experienced field man to advise defendants on the best methods of breeding, feeding and caring for the pigs, and agreed to buy from defendants "all standard gilts weighing not less than 135 pounds, and not to exceed six months of age from at least the first two litters, of all sows" covered by the order, and "to pay therefor the sum of 14¢ per # providing said gilts are double treated for cholera by a veterinarian qualified to act, provided also that all gilts covered by this order are sired by a boar approved by the Northwestern Pure Bred Sow Co. and accompanied by a certificate of Registration."

It is alleged that the sows delivered to defendants are not pure bred; are not registered or entitled to be, and are valueless as breeding stock; that, when defendants learned of the falsity of the representations, they also learned that plaintiff was the owner of the conditional sale note and thereupon tendered to plaintiff all of the sows and their offsprings upon condition that plaintiff repay to them the $140, together with the expense

of caring for and feeding the sows and the offspring, alleged to be $2,386.91 at the time of filing the answer; that they are still willing to deliver the pigs upon those conditions; that demand was made upon plaintiff that he furnish a field man to defendants, which was refused by plaintiff and also by the Northwestern Pure Bred Sow Company; that demand was made upon plaintiff for certificates of registration, and this was refused by plaintiff, as well as by the Northwestern Pure Bred Sow Company; that both plaintiff and the Northwestern Pure Bred Sow Company have refused to buy the offspring of said sows from defendants at the price stated in the agreement; that defendants have a lien on all the pigs for the amount of $140 paid as part of the purchase price and for the expense of feeding and caring for them. It asked judgment against plaintiff for the sums above specified and that it be adjudged that the defendants have a lien upon the pigs, that the lien be foreclosed and the pigs sold, and, in case the proceeds are not sufficient to pay defendants' claim, that a deficiency judgment be entered against plaintiff.

The cause came on for trial before the court, sitting with a jury. The jury found for defendants and against plaintiff, and judgment was entered in favor of defendants for costs. At the trial plaintiff introduced the note, showed its indorsement and delivery to plaintiff before maturity for a cash consideration of $600, that he was still the owner of it, and that it was overdue and unpaid. Defendants were then permitted to introduce in evidence over plaintiff's objection Exhibit A, the other agreement between them and the Northwestern Pure Bred Sow Company. They then introduced evidence showing the breach of that contract by plaintiff's assignor in several particulars.

The first contention of plaintiff is that the court erred in permitting the defendants, over plaintiff's objection, to introduce in evidence Exhibit A on the ground that, since the affirmative defense had been stricken from the answer, there was no pleading before the court other than the general denial of plaintiff's right of possession of the pigs, and that therefore

the pleadings were not sufficient to warrant the reception of this evidence, followed by evidence showing that there was a default under the contract.

Whether the evidence showing the breach of the contract by plaintiff's assignor was admissible under the general denial need not now be determined, for, if we assume that it was admissible, it does not warrant the verdict and judgment in favor of defendants, as we shall hereinafter point out.

On the evidence, as presented, the court should have sustained plaintiff's motion for a directed verdict. We are asked by plaintiff to reverse the judgment and direct the lower court to enter judgment in his favor. On the record we think the cause should be remanded for a new trial.

The motion to strike the affirmative defense was upon the ground that it "does not contain or state facts sufficient to constitute a cross-complaint or counterclaim or defense to the complaint."

By cross-assignment of error, defendants contend that the court erred in striking the affirmative defense. The affirmative defense, as we shall show, was not vulnerable to a motion to strike on the ground stated.

Plaintiff asserts that whether the court erred in striking the affirmative defense cannot be reviewed on this appeal. This contention is grounded upon the claim that the ruling of the court in sustaining the motion to strike was not properly and timely preserved by a bill of exceptions so as to make the question reviewable under section 9751, Revised Codes 1921.

From the record it appears that the order striking the affirmative defense contained in the first answer was entered on April 11, 1930. An amended answer was filed setting forth the same affirmative matter in substantially the same words, and this was stricken on March 9, 1931. The cause was tried on March 28 and judgment was entered on September 25. Plaintiff presented his proposed bill of exceptions on April 4. The proposed bill did not include the proceedings on the motion to strike. Defendants offered amendments to the proposed bill, which incorporated these proceedings. To the

amendments plaintiff filed objections on the ground that those proceedings took place long before the trial and more than 15 days prior to their service upon plaintiff and that no order extending the time for a bill of exceptions had been made, and that the time had elapsed within which a bill of exceptions might be proposed on those proceedings. The court ordered the amendments incorporated in the bill of exceptions and, as thus amended, it was settled on May 16, 1931, before the final judgment was entered in the case.

The amendments offered by defendants to the proposed bill of exceptions were properly allowed by the court, and are properly before us as a part of the bill of exceptions. Section 9394, Revised Codes 1921, provides: "Hereafter all district courts and judges, on settlement and allowance of any bill of exceptions at any stage of the trial of a cause, shall upon demand of either party, or, in the discretion of said court or judge upon its or his own motion, incorporate into such bill of exceptions all rulings, or orders, or proceedings made in the cause against either of the parties, affecting the substantial rights of either, together with the objections and exceptions thereto properly made and reserved, and the same shall be settled and allowed as a part of such bill."

In *Watts* v. *Billings Bench Water Assn.*, 78 Mont. 199, 253 Pac. 260, 263, this court, in speaking of this section of the statute, said: "It seems to us clear that the intention of the Legislature was to simplify the procedure on settlement of bills of exceptions, and to provide for the inclusion in the only bill of exceptions ordinarily necessary on an appeal, those matters which might affect the substantial rights of the respondent in a case, as well as those affecting the substantial rights of the appellant."

Section 9389 gives a party the right to have a bill of exceptions settled at the time of an adverse decision. But that section is permissive only and not exclusive, and, if the right is not availed of at the time of the decision, it may be exercised under section 9390 within 15 days after the entry of judgment. It was so held in California under statutes similar to sections 9389

and 9394 as early as 1881 in *Tregambo* v. *Comanche Mill &
Mining Co.*, 57 Cal. 501. And see, to the same effect, *Flagg* v.
*Puterbaugh*, 98 Cal. 134, 32 Pac. 863.

Here the bill of exceptions containing the matter complained
of was settled before the judgment was entered, and was in
ample time to meet the requirements of section 9390.

Did the court err in striking the affirmative defense?
Proper consideration of this question makes it necessary to con-
sider the status of the plaintiff as assignee and particularly
as to whether the same defenses are available against him as
would have been available against the assignor. The note
containing the conditional bill of sale is treated by the parties
as a non-negotiable instrument, and we shall so consider it.

Section 7415, Revised Codes 1921, provides: "A non-nego-
tiable written contract for the payment of money or personal
property may be transferred by indorsement, in like manner
with negotiable instruments. Such indorsement shall transfer
all the rights of the assignor under the instrument to the
assignee, subject to all equities and defenses existing in favor
of the maker at the time of the indorsement."

And section 9068 in part provides: "In the case of an as-
signment of a thing in action, the action by the assignee is
without prejudice to any set-off or other defense existing at the
time of, or before, notice of the assignment."

Plaintiff contends that the breach of the contract, Exhibit A,
▮▮▮▮ is shown to have occurred after the assignment thereof
to plaintiff and in consequence the defense is not available to
defendants as against this plaintiff. But the affirmative de-
fense contains allegations of fraud made at the inception of
the contract which, if true, gave defendants the right, upon
discovering it, to rescind the contract. This is what they seek
by their affirmative defense. The fact that the fraud was not
discovered until after the assignment does not militate against
the claim that the defense existed at the time of the assignment.
The fraud and the right to rescind therefor existed at the
time the false representations were made, and it is that fraud
which defendants rely upon in their affirmative defense. The

536

affirmative matter does not, strictly speaking, amount to a counterclaim. No affirmative judgment could be obtained by defendants against plaintiff, for the rule is that the assignee of an executory contract does not assume the obligations imposed by the contract on the assignor (2 R. C. L. 625; 5 C. J. 976; and see *Lavelle* v. *Gordon,* 15 Mont. 515, 39 Pac. 740), but of course he may do so.

Here as a part of the affirmative defense defendants alleged, in substance, that, upon discovering the fraud, they offered to rescind the contract and deliver back the pigs upon being placed *in statu quo.* In order to be placed *in statu quo,* they were entitled to the money paid as part of the purchase price, and where, as here, the property required feed and care, they were entitled upon a rescission of the contract to be reimbursed for expenses for such feed and care (Black on Rescission and Cancellation, 2d ed., sec. 635; *Ford* v. *Oliphant,* (Tex. Civ. App.) 32 S. W. 437; *Berkey* v. *Lefebure & Sons,* 125 Iowa, 76, 99 N. W. 710; *Munson* v. *Simon,* 6 La. App. 550), at least for such as was incurred prior to and within a reasonable time after rescinding (55 C. J. 298; *Sorensen* v. *Wells,* 37 Idaho, 13, 214 Pac. 749). While the authorities are in conflict as to whether the buyer who rescinds a contract for the sale of goods has an equitable lien for recovery of the amount necessary to place him *in statu quo* (*National Cash Register Co.* v. *Hude,* 119 Miss. 36, 7 A. L. R. 990, 80 South. 378; *Alexander* v. *Walker,* (Tex. Civ. App.) 239 S. W. 309; *Truman's Pioneer Stud Farm* v. *Hansen,* 108 Kan. 717, 196 Pac. 1087), the accepted rule is that, where the seller is insolvent, the buyer has such a lien. Here it is alleged that Mulder represented that the Northwestern Pure Bred Sow Company was solvent, but that the representation was false. This is equivalent to an allegation that the seller is insolvent. When this is so, the buyer has an equitable lien on the property entitling him, upon a rescission of the contract, to retain possession of the property until the lien is discharged. (*Hall* v. *Bank of Baldwin,* 143 Wis. 303, 127 N. W. 969; *Hackney Mfg. Co.* v. *Celum,* (Tex. Civ. App.) 189 S. W. 988; and note in 7 A. L. R.,

p. 994.) Such a lien is not dependent upon contract, express or implied—a prerequisite to an agister's lien (*Love* v. *Hecer*, 67 Mont. 497, 215 Pac. 1099; *Noel* v. *Cowan*, 80 Mont. 258, 260 Pac. 116)—but is based upon consideration of justice— *ex aequo et bono* (Pomeroy's Equity Jurisprudence, 4th ed., sec. 1238 et seq.).

When property sought to be recovered in replevin is subject to a lien or charge, the lien or charge may be enforced by recoupment. (54 C. J. 460; *Macky* v. *Dillinger*, 73 Pa. 85.)

The defense thus asserted challenges plaintiff's right of possession, and will not necessitate the entry of two judgments so as to fall within the rule announced in *Osmers* v. *Furey*, 32 Mont. 581, 81 Pac. 345. The equitable lien, if established, would entitle defendants to retain possession of the pigs until the lien was discharged. (*Whiting* v. *Squeglia*, 70 Cal. App. 108, 232 Pac. 986; *Myers* v. *Townsend*, 103 Iowa, 569, 72 N. W. 761; *Liquid Carbonic Co.* v. *Coclin*, 161 S. C. 40, 159 S. E. 461; *Land Finance Corp.* v. *Sherwin Elec. Co.*, 102 Vt. 73, 75 A. L. R. 1025, 146 Atl. 72; *Wellington Stone Co.* v. *Thomas*, 11 La. App. 242, 123 South. 410; *Auto Brokerage Co.* v. *Ullrich*, 102 N. J. L. 341, 131 Atl. 901.)

The court erred in striking the affirmative defense unless, as plaintiff contends, Exhibit A was a separate independent contract from the note sued upon. The record discloses that without Exhibit A the note would not have been executed. The two documents together form the contract of the parties, and should be read together. (*United States National Bank* v. *Chappell*, 71 Mont. 553, 230 Pac. 1084; *Stern* v. *Sunset Road Oil Co.*, 47 Cal. App. 334, 190 Pac. 651; *Doub* v. *Rawson*, 142 Wash. 190, 252 Pac. 920.)

It was error to strike the affirmative defense from the answer on the ground stated. The case of *Arnold* v. *Fraser*, 43 Mont. 540, 117 Pac. 1064, is not in point here under the facts. (See, also, *Friedrichsen* v. *Cobb*, 84 Mont. 238, 275 Pac. 267.) Conceding that evidence of the fraud and the consequent rescission alleged in the affirmative defense was admissible under the general denial, plaintiff is in no position to com-

plain if defendants give him more information in their pleading than they are required to give. Defendants offered no evidence to show fraud and rescission of the contract. They evidently assumed, as they had the right to do, that, since the affirmative defense on the ground stated was stricken, evidence would not be received in support of it. (Compare *Broderick* v. *Stevenson Oil Co.*, 88 Mont. 34, 290 Pac. 244.)

Under the circumstances, the cause should be remanded for a new trial to enable each party to present all of his evidence.

The claim of plaintiff that defendants did not offer to rescind promptly upon discovering the fraud cannot be sustained if the allegations of the answer be true. But, if they are precluded from rescinding for any reason, they are not without defense.

This brings us to the remaining point which must be considered. Defendants, as above stated, introduced evidence of the breach of the contract by plaintiff's assignor in several particulars. Defendants contend that this evidence was sufficient to warrant affirmance of the judgment on this account. Plaintiff contends the evidence was inadmissible under the pleading, and, in any event, that, since the breach occurred after the assignment and notice thereof, it is no defense. Even though the breach of the contract had not occurred at the time or before notice of the assignment, it may be shown by way of recoupment. (57 C. J. 488, note 48; Bancroft's Code Pleading, sec. 374.) This is on the theory that the right of defendants to claim damages for the breach of the contract existed at the time the contract was made, and that therefore, though the breach did not occur until after assignment, it is available as a defense against the assignee. (*American Bridge Co.* v. *City of Boston*, 202 Mass. 374, 88 N. E. 1089; *Rockwell* v. *Daniels*, 4 Wis. 432; *Stern* v. *Sunset Oil Co., supra; Seibert* v. *Dunn*, 216 N. Y. 237, 110 N. E. 447. And see *Delco Light Co.* v. *John Le Roy Hutchinson Properties*, 99 Fla. 410, 128 South. 831; *Mercantile Trust Co.* v. *Roland*, 143 Okl. 190, 288 Pac. 300; *Salt Fork Coal Co.* v. *Eldridge Coal Co.*, 170 Ill. App. 268.)

The rule is announced by Williston on Contracts, section 433, as follows: "Thus if payments under an executory contract are assigned, the debtor may set up failure of the assignor to fulfill his part of the contract though such failure occurs after notice of the assignment, for the assignor cannot give another a larger right than he has himself; and breach of warranty may similarly be asserted against the assignee of non-negotiable note, if the warranty was given at the time when the note was made, though the breach of warranty did not occur until after notice of the assignment."

And it is of no consequence that plaintiff, at the time of ■ the assignment, did not know of the obligations imposed upon his assignor by Exhibit A. He was dealing with a non-negotiable instrument. He knew it was subject to defense, if any existed. (See *Doub* v. *Rawson*, supra; *Stern* v. *Sunset Oil Co.*, supra.)

We do not question the correctness of the cases of *Stadler* v. *Bank*, 22 Mont. 190, 74 Am. St. Rep. 582, 56 Pac. 111, and *Cornish* v. *Woolverton*, 32 Mont. 456, 108 Am. St. Rep. 598, 81 Pac. 4, under the facts there presented, but by reason of the diversity of facts they are not in point here.

However, as we have heretofore stated, evidence of the ■ breach of the contract was not sufficient to sustain the verdict and judgment. To constitute a defense to plaintiff's action for possession on the ground that plaintiff's assignor breached the contract, there must be proof that the damages occasioned by the breach equal or exceed the amount claimed to be due to plaintiff under the contract. (*Mercantile Trust Co.* v. *Roland*, supra, and cases there cited. And see *Neely* v. *Thomas Motor Co.*, 151 Okl. 128, 6 Pac. (2d) 12.) Here there was no evidence showing the extent of the damages to defendants by reason of the breach of the contract on the part of plaintiff's assignor. Upon a new trial, if defendants can establish the right to rescind the contract then they have an equitable lien on the property which must be paid by plaintiff before he is entitled to the possession thereof. If defendants can establish an equitable lien as alleged, then

the amount of it, if controverted by plaintiff, should be adjudicated so that plaintiff may know how much he must pay to defendants in order to obtain possession of the property.

If defendants cannot, for any reason, establish the right to ▮ rescind the contract, and thus fail in establishing the alleged lien, or if they must be held to have affirmed the contract, or elect to affirm it, and thus must rely upon the remedy of seeking damages for its breach, or damages for the fraud alleged (see *Doornbos* v. *Thomas*, 50 Mont. 370, 147 Pac. 277), then, before they can defeat plaintiff's right to the possession of the pigs, they must show that the damages sustained by them equal or exceed the amount due plaintiff, lack of payment of which gave rise to plaintiff's claim to the right of possession of the property. It is, of course, fundamental that defendants cannot pursue both the remedy by rescission and affirmance. (*Friedrichsen* v. *Cobb*, supra.)

Accordingly, the judgment is reversed and the cause remanded to the district court of Fergus county for further proceedings consistent with the views herein stated.

MR. CHIEF JUSTICE CALLAWAY, MR. JUSTICE MATTHEWS, HONORABLE JEREMIAH J. LYNCH and HONORABLE JOHN HURLY, District Judges, sitting, respectively, in place of ASSOCIATE JUSTICES GALEN and FORD, disqualified, concur.

Rehearing denied December 17, 1932.