No. 13126

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

MASSEY-FERGUSON CREDIT CORPORATION,
a corporation,

Plaintiff and Respondent,

-vs-

BRUCE BROWN,

Defendant and Appellant.

---

Appeal from: District Court of the Tenth Judicial District,
Honorable LeRoy L. McKinnon, Judge presiding.

Counsel of Record:

For Appellant:

James C. Wilkins, Jr. argued, Lewistown, Montana

For Respondent:

Leonard H. McKinney argued, Lewistown, Montana

---

Submitted: February 2, 1976

Decided: MAR 24 1976

Filed: MAR 24 1976

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment for plaintiff entered in the district court, Fergus County. Plaintiff Massey-Ferguson Credit Corporation brought the action to recover the balance due on a retail installment contract involving the sale of farm machinery. Trial was held October 4, 1974, before Hon. LeRoy L. McKinnon, sitting without a jury. Judgment was entered on April 9, 1975 for plaintiff. Defendant Bruce Brown appeals from that judgment.

Appellant Brown is a local farmer and rancher in the Lewistown, Montana, area. Respondent is the assignee of the former Dan Morrison & Sons, a now defunct Massey-Ferguson implement dealer in the city of Lewistown.

In early August, 1970, appellant Brown began negotiating with the firm Dan Morrison & Sons for a used Model 990 New Holland combine farm machine. To ascertain the condition of the used machine, Brown inquired of Morrison concerning his dealings with the former owner, one Bill Seilstad. Morrison offered to call Seilstad and Brown was able to speak with him while Morrison listened on an extension telephone. Seilstad informed Brown of the machine's deficiencies and Morrison promised to repair them. On August 22, 1970, a purchase order was signed and the machine was delivered to Brown several days later. Brown used the machine to cut a few acres of barley, but a broken shaft made further use of the machine impossible. Several weeks later, approximately October 1, 1970, Brown repaired the machine and again began to cut, but problems with the combine forced him to stop before fifteen acres had been covered.

Throughout the period between August 22, 1970 and October 1, 1970, Morrison made several visits to appellant's ranch in hopes of securing his signature on a retail sales agreement,

but without success. On October 2, 1970 Brown went to town and told Morrison that he could not accept the machine. Appellant's reasons for this decision and his testimony concerning the events which thereafter occurred appear in the record:

> "A. The work that it needed done and the condition that it was in, and Don said they would fix all this, and I wasn't very interested in the deal yet, but anyway, he wrote down all the stuff I said that needed done, and he guaranteed that it would be done, and -
>
> "Q. Who wrote this down? A. Don did. * * *
>
> "Q. And he got the information from whom? A. As to what to do?
>
> "Q. Right. A. I did. I was the one that told him what was needed done or what I felt needed to be done, and he said there is no problem.
>
> "Q. Is this at the time you signed the contract? A. This was actually, probably fifteen minutes prior to me signing the contract.
>
> "Q. Did Mr. Koch [Massey-Ferguson representative and witness to the sales contract] take any part, make any comments or say or do anything? A. He said that he had been with Massey for so many years and that he knew Don, * * * and he said you know his word is good. If he says he's going to fix it, he'll fix it."

The items to be repaired were apparently written down, but never made a part of the contract. There is, however, no question that these representations or promises to repair the machine were in fact made, as they were never denied by Morrison and the above-quoted testimony appears in the record without objection. Several days after the contract was signed, Morrison sent a mechanic out to repair the combine, but for some reason he did not repair it. The machine was never repaired. During the summer 1971, Morrison closed his business as a farm implement dealer. On July 14, 1971, Morrison wrote appellant to inform him of this fact, and to offer the services of another implement dealer to repair the machine, but a satisfactory arrangement could not be made.

The contract, which had been assigned to respondent on the day of its execution, called for an initial payment on November 1, 1971, and contained an acceleration clause in case of default. Appellant failed to make any payment on the agreement, and on December 9, 1971, wrote the respondent in an attempt to explain his position. The machine was repossessed nine months later and was finally sold to another implement dealer for $1850. Respondent deducted the sales price and sued for deficiency. Appellant counterclaimed for the price of his trade-in, the rental paid for use of another combine for the 1971 season, and for his labor and parts expended in the repair of the combine.

Two basic issues arise on appeal:

1) Did the seller breach and render unenforceable his contract with the buyer in failing to perform his promise to repair.

2) May this defense be validly asserted against seller's assignee under section 87A-9-206(1), R.C.M. 1947?

It is the position of respondent that the contract is complete on its face, that parol evidence may not be admitted to vary the terms stated therein, and that no breach could have occurred which is provable in a court of law. Section 87A-2-202, R.C.M. 1947, provides:

> "Final written expression--parol or extrinsic evidence. Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented
>
> "(a)   by course of dealing or usage of trade (section 87A-1-205) or by course of performance (section 87A-2-208); and
>
> "(b)   by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete, and exclusive statement of the terms of the agreement."

The Uniform Commercial Code as adopted in Montana, operates to exclude extrinsic or parol evidence only where the district court finds that the writing is, on its face, a full and final integration of the parties embracing all the terms of the agreement, or where the evidence offered is inconsistent or contradictory to the terms of the written instrument. Martel Construction Inc. v. Gleason Equipment, Inc., 166 Mont. 479, 534 P.2d 883, 32 St.Rep. 402; 2 Williston on Sales § 13-9, p. 88 (1974); 67 Am Jur 2d Sales, § 194.

Under the facts and circumstances presented, the parol evidence rule cannot be applied to exclude evidence of the promise to repair. Here the district court did not find the writing was a full and final integration of the parties. Rather, the court specifically found "the sellers promised to make necessary repairs". In light of the testimony and exhibits, it is clear the district court could not reasonably find otherwise. While the parol evidence issue was raised by respondent in its trial brief, all testimony and exhibits which were offered to prove the existence of an independent agreement to repair were admitted without objection. As a result the record not only contains appellant's testimony regarding the agreement to repair, but several admissions by the seller, in open court, affirming the agreement:

"Dave Morrison:

"A. This was the day that I informed Bruce [appellant] that we would take care of the combine and we would make arrangements for the combine to be fixed.

"Q. Well, was it fixed? A. No, sir, it wasn't fixed."

We need not consider further the complexities of the parol evidence rule or its applicability to the facts of this case. Here the failure to object at the time the evidence was offered was fatal, especially where respondent was first to introduce parol

evidence tending to establish the existence of the agreement. We apply the long established rule that an objection to the admission of parol evidence cannot be raised for the first time on appeal, and that such an objection is waived when no effort is made to preserve it at the time it is offered. Anno: 92 A.L.R. 810.

Having determined that seller's breach of oral contract is a valid defense against the action on the retail installment agreement, we now consider whether this defense can be applied to respondent, seller's assignee. Respondent asserts the seller's breach is not an applicable defense against the assignee of this retail installment contract. Undeniably, appellant's signature appears on a contract which states:

> " * * * buyer(s) will not set up any claim, or defense which he may have against the seller as a defense * * * in any action * * * by the seller's assignee."

The enforceability of covenants of this type is governed by section 87A-9-206(1), R.C.M. 1947, which provides in pertinent part:

> " * * * an agreement by a buyer or lessee that he will not assert against an assignee any claim or defense which he may have against the seller or lessor is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense * * * ".

In our view, respondent Massey-Ferguson Credit Corporation cannot be considered among those whose protection is contemplated by section 87A-9-206(1). The evidence shows that respondent's representative participated, at least to some degree, in making the sale by orally affirming the seller's promises to appellant buyer. It is clear from the exhibits that the contract was executed and assigned at about the same time and upon the same instrument, and the blank form sales contract employed was in this

case furnished by respondent corporation.  Under these circumstances, it has been held the assignee does not take the assignment "without notice of a claim or defense" and is therefore not entitled to the enforcement protection provided by section 87A-9-206(1), R.C.M. 1947.  New Holland Machine Company v. Lewis, (Tex. Civ. App. 1971), 470 S.W.2d 234; Anno: 44 ALR2d 8, 157-161.  We find these rulings in strict accord with the purpose and policy behind this section of the Uniform Commercial Code, as explained in Massey-Ferguson, Inc. v. Utley, (Ky. 1969), 439 S.W.2d 57, 60:

> "We consider it to be the policy of the Uniform Commercial Code to encourage the supplying of credit for the buying of goods by insulating the lender from lawsuits over the quality of the goods.  But we conceive that the insulation was intended primarily for financial institutions rather than the manufacturer who finances his own sales.  He needs no inducement to supply credit for the purchase of his goods because the whole object of his business is to sell his goods."

The judgment of the district court is reversed.  The cause is remanded for consideration of appellant's counterclaim.

_____
                                        Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

- 7 -