No. 13506

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

MASSEY-FERGUSON CREDIT
CORPORATION, a corporation,

Plaintiff and Appellant,

-vs-

BRUCE BROWN,

Defendant and Respondent.

---

Appeal from:   District Court of the Tenth Judicial,
               Honorable LeRoy L. McKinnon, Judge presiding.

Counsel of Record:

For Appellant:

Leonard H. McKinney argued, Lewistown, Montana

For Respondent:

James Wilkins argued, Lewistown, Montana

---

Submitted:   May 26, 1977

Decided: JUL 2 9 1977

Filed: JUL 2 9 1977

_Thomas J. Kearney_
                                    Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

This is an appeal from an order of the district court, Fergus County, awarding defendant his counterclaim of $2,450 and costs of $279.85.

Defendant Bruce Brown is a local farmer and rancher in the Lewistown, Montana area. Plaintiff Massey-Ferguson Credit Corporation (M-F) is the assignee of the former Dan Morrison & Sons, a now defunct Massey-Ferguson implement dealer in the city of Lewistown.

The original district court action was brought by M-F against Bruce Brown for a deficiency judgment. Brown answered and counterclaimed for the price of a combine which plaintiff's assignor, Dan Morrison & Sons, had taken as a trade-in.

The district court found for M-F. Defendant appealed. This Court reversed and remanded for consideration of Brown's counterclaim. Massey-Ferguson Credit Corporation v. Brown, _____ Mont.____, 547 P.2d 846, 33 St.Rep. 314 (1976). On remand the district court entered judgment for Brown in the amount of $2,450 with interest from August 8, 1972, and for costs in the sum of $279.85. After denying the motion for new trial and to amend findings of fact and conclusions of law, the district court cited Brown saying M-F cannot be considered among those whose protection is contemplated by section 87A-9-206(1), R.C.M. 1947. M-F appeals from this decision on remand.

The findings of fact by the district court show:

"1. That defendant traded in to Dan Morrison & Sons an International 141 combine valued at $2,450.00 on a secondhand New Holland 990 combine valued at $7,700.00 as evidenced by a retail installment contract dated October 1, 1970.

"2. That Dan Morrison & Sons concurrently assigned the contract to plaintiff, Massey-Ferguson Credit Corporation.

"3. That Dale Koch, Massey-Ferguson's Credit Corporation representative, made certain representations to the defendant concerning the combine, and signed the contract as witness, giving the plaintiff knowledge of the claims and defenses which might arise from the contract.

"4. That plaintiff and its assignor failed to perform the required repair work on the New Holland 990 combine and thereafter on the 8th day of August, 1972, took possession of the combine and thereby repudiated the contract.

"5. That defendant did not recover his trade-in combine valued at $2,450.00, nor that sum of money."

The question on appeal is whether Brown is entitled to receive from M-F the value of the trade-in over and above being absolved from making any payments on the contract.

The parties to this appeal are bound by the law of the case as determined on prior appeal. O'Brien v. Great Northern R. Co., 148 Mont. 429, 421 P.2d 710. In Brown, 547 P.2d 849, this Court stated:

"In our view, respondent Massey-Ferguson Credit Corporation cannot be considered among those whose protection is contemplated by section 87A-9-206(1). The evidence shows that respondent's representative participated, at least to some degree, in making the sale by orally affirming the seller's promises to appellant buyer. It is clear from the exhibits that the contract was executed and assigned at about the same time and upon the same instrument, and the blank form sales contract employed was in this case furnished by respondent corporation. Under these circumstances, it has been held the assignee does not take the assignment 'without notice of a claim or defense' and is therefore not entitled to the enforcement protection provided by section 87A-9-206(1), R.C.M. 1947."

Since the defense of section 87A-9-206(1) is not applicable to M-F, the remaining question to be determined is to what extent an assignee is liable to the buyer for claims against the assignor.

3 U.L.A.-U.C.C. §9-318(1) incorporates the general rule that an assignee of contract rights stands in the shoes of the assignor and has no greater rights against the account

- 3 -

debtor than the assignor. The assignee is also subject to all the equities and defenses which could have been raised by the debtor against the assignor. Farmers Acceptance Corporation v. DeLozier, 178 Colo. 291, 496 P.2d 1016, 1018. See also the official comment to section 9-318(1) which states that no substantial changes are made to prior law. Uniform Laws Annotated, Volume 3, 9-318. Section 87A-9-318(1) is Montana's incorporation of this section. Section 87A-9-318(1) provides that the rights of an assignee of contract rights are subject to all terms of the contract between the account debtor and assignor, and any defense or claim arising therefrom. The term "claim" includes set-offs and counterclaims. See DeLozier, 496 P.2d 1018, where the Colorado Supreme Court, while interpreting a like statute, concluded that "claim" includes set-offs and counterclaims. See also Hudson Supply & Equipment Co. v. Home Factors Corp.,/210 A.2d 837 (D.Ct.App. 1965).

By virtue of the assignment, M-F was subject to the same defenses and claims of Brown as would be the assignor, Dan Morrison & Sons. This Court in Brown determined that the seller breached its oral contract to Brown, and that this defense could be applied against the assignee M-F. M-F's rights under this assignment of the sales contract are subject to claims arising out of the sales contract.

Plaintiff alleges that he is not liable for the defendant's counterclaim since the transaction, where the assignor accepted the trade-in, arose between defendant and Dan Morrison & Sons. Plaintiff cites DeLozier as a correct pronouncement on the law. In DeLozier, the plaintiff, Farmers Acceptance Corporation (FAC), accepted assignment of the right to monies under the assignor's contract with DeLozier. When the assignor failed to perform DeLozier cancelled the contract and sued FAC for the assignor's indebtedness arising out of the contract. The Colorado

- 4 -

Court resolved this question of claims arising out of the

contract according to the Uniform Commercial Code, 496 P.2d at

1018:

> " * * * Consequently, FAC was not entitled
> to any payments which were made pursuant to the
> underlying contract and which were conditioned
> upon performance.
>
> "FAC was not, however, obligated to perform the
> contract upon Diviney's failure to perform.
> Neither was FAC liable for Diviney's indebted-
> ness to DeLozier arising out of the contract.
> The reason is that an assignee of contract rights
> is not subject to the contract or tort liabilities
> imposed by the contract on the assignor, in the
> absence of an assumption of such liabilities.
> C.R.S. 1963, 155-9-317; 6 Am.Jur.2d Assignments
> §109.
>
> "In instances such as this, where the assignee
> obtains money which the assignor could only
> retain upon performance of a contract, the
> following rule applies:  '[W]here the assignor
> fails to perform the contract, the assignee
> cannot retain mistaken, or even negligent,
> payments made to it by the [debtor] unless there
> has been a subsequent change of position by the
> assignee.'  Gilmore, The Assignee of Contract
> Rights and His Precarious Security, 74 Yale L.J.
> 217, 235, n. 35 (1964-65); see Firestone Tire
> & Rubber Co. v. Central Nat'l Bank, 159 Ohio
> St. 423, 112 N.E.2d 636 (1953).  See also,
> Westing v. Marlatt, 124 Colo. 355, 238 P.2d
> 193 (1951)."

See corresponding Montana sections 87A-9-318(1), 87A-9-317.

While this Court agrees with the general law cited by

the Colorado Court, the case in question is factually distin-

guishable.  In DeLozier the assignee, FAC, did not have a close

relationship, nor participate in the transaction with Howard

DeLozier.  The only contact FAC had with DeLozier came from

the assignment of the assignor's right to monies under the

contract between DeLozier and the assignor.  In Brown, M-F's

representative participated in making the sale by orally affirm-

ing the seller's promises to defendant; the contract was exe-

cuted and assigned concurrently to M-F; the blank form sales

contract employed was furnished by M-F.  The Colorado Court

- 5 -

denied the assignee a payment that the debtor had made to it, but the Court did not order the assignee to make additional payments due to debtor from the assignor after all set-offs had been made, nor to perform the contract as the assignor was obligated to. Under section 87A-9-317, R.C.M. 1947, this Court agrees with Colorado. In the case at bar the close relationship and participation between the assignor and assignee requires a departure from the general rule of law.

Under certain circumstances an assignee has been held to have impliedly assumed the contractual obligations of the assignor. In Northern Pac. Ry. Co. v. Sunnyside Valley Irr. Dist., 11 Wash.App. 948, 527 P.2d 693, 694, the Washington Court considered all facts pertaining to the conduct of the assignee:

> " * * * While there is no express assumption of the underlying agreement, a consideration of all the facts compels the inference that the defendant assumed the conditions of the permit. McGill v. Baker, 147 Wash. 394, 266 P. 138 (1928). * * * The defendant argued that it had not assumed any of the duties of the dissolved corporation and that it was not an assignee under the contracts containing the indemnity agreements. In answer, the court stated:

> "A third person may, of course, assume the obligation expressly in writing, or he may do so by implication where his conduct manifests an intent to become bound * * *. In the latter event all the circumstances must be considered, such as the subject matter of the contract, the third person's acts and words, whether he acquiesced in the terms of the contract, performed its obligations, or accepted its benefits."

In Thompson v. Lincoln Ins. Co., 114 Mont. 521, 530, 138 P.2d 951, this Court reached the same conclusion:

> "The dissent perforce admits the undeniable rule that the assignment of a contract does not ordinarily operate to cast the contract liabilities upon the assignee in the absence of an assumption thereof by him. The dissent further says, what is obvious, that the assignee may assume the assignor's liabilities, that under certain circumstances and conduct the law will imply such assumption, and that he may not enforce the contract without performing its terms. * * *"

The facts and circumstances surrounding M-F's acceptance of Brown's contract put M-F in the position of more than a mere assignee accepting rights to monies under a sales contract.

The ability of a court to consider all facts and circumstances is given support by the Kentucky court in Massey-Ferguson v. Utley, (Ky. 1969), 439 S.W.2d 57, 59:

> "However, Massey-Ferguson maintains that a breach of any implied warranty made by the dealer cannot be asserted against Massey-Ferguson as assignee of the sales contract * * *.
>
> " * * *
>
> "In a substantial number of cases, annotated in 44 ALR2d 8 @ 157 to 161, it was held that a manufacturer to whom a dealer had assigned commercial paper was not a holder in due course. As indicated in the annotation, it appears that in most of the cases the circumstances were held to warrant a conclusion that the manufacturer was the real vendor in the transaction. The circumstances most frequently held to be significant were (1) a manufacturer's representative assisted or participated in the sale by the dealer, and (2) the manufacturer's course of dealing was for it to furnish blank sales contracts to its dealer, and for the dealer to immediately and routinely assign the contract to the manufacturer as soon as a sale was made.
>
> "In the instant case the evidence was that a factory representative visited Utley with the dealer and participated in making the sale. Also, that Massey-Ferguson followed the course of dealing above described as to supplying blank forms and receiving immediate and routine assignments. So we have present here the two circumstances most frequently relied upon by other courts as a basis for holding the manufacturer-assignee not to be a holder in due course.
>
> "It is our opinion that under the circumstances of this case Massey-Ferguson cannot be considered to be within the class of those who are protected by the covenant against assertion of defenses, at least as to the defense of breach of an implied warranty of fitness. We base our conclusion on the proposition that Massey-Ferguson's conduct put it in the status of a 'seller' and that its status as a 'seller' outweighs its status as an 'assignee,' as those terms are used in KRS 355.9-206 and were used in the contract. It should not

> be accorded the protection of an assignee
> against defenses that derived from its actions
> as a seller."

Utley was cited by this Court in Brown, 547 P.2d at 850. The facts of this case in question are similar to Utley. M-F's representative participated in the sale, M-F furnished the blank sales contract, and M-F received the concurrently executed and assigned contract. Based on Sunnyside Valley Irr. Dist. and Utley, the district court, in looking at the facts and circumstances of the transaction, did conclude that M-F was acting as more than a mere assignee and impliedly accepted the obligations of its assignor.

The plaintiff looks to the pre-code situations in Montana for support to limit his liability. Apple v. Edwards, et al., 92 Mont. 524, 16 P.2d 700. Apple, as discussed in 87 A.L.R. 179, shows that in an action by an assignee of a conditional sales contract, the breach of the contract, occurring after assignment and notice thereof, might be shown by way of recoupment. The account debtor's right to claim damages existed at the time the contract was made and continued as a defense against the assignee.

Apple is factually distinguishable in the same manner as was DeLozier. No close relationship nor participation between the assignor and the assignee was present. The false and fraudulent representations relied on by defendant for rescission of the contract arose during dealings with the assignor. The facts show that when defendant became aware of the falsity of the assignor's representations, he also learned of the assignment to plaintiff. Plaintiff had not participated in the formation of the contract between the assignor and defendant, nor was any close relationship shown between plaintiff and the assignor.

In the case at bar, the close relationship and participation between the assignor and assignee put M-F on notice of the

claims which might arise. Due to this knowledge and participation, M-F was vulnerable to defendant's counterclaim.

This Court is confronted with a situation similar to that faced by the Supreme Court of Texas. Dallas Farm Machinery Company v. Reaves, 158 Tex. 1, 307 S.W.2d 233. The facts are similar, except that in Reaves, the plaintiff was the implement seller suing on the installment sales contract. M-F and Dallas Farm Machinery Company are similar in that, according to the criteria of Utley, M-F is more a seller than an assignee and from Brown, M-F is without the protection of section 87A-9-206(1).

In Reaves the Texas Supreme Court allowed the defendant to recover the value of the trade-in tractor and rescinded the contract due to plaintiff's fraudulent representations and inducement. Reaves, though a pre-code Texas case, is relied on today for authority. See Robert v. Sumerour (Tex. 1976) 543 S.W.2d 890; Johnson v. Buck (Tex. 1976) 540 S.W.2d 393.

Plaintiff also submits that the counterclaim is not a proper claim against M-F and that there is no basis to afford Brown relief. This claim is without merit. Plaintiff is an assignee. An assignee stands in the shoes of the assignor and is liable for the claims arising out of the contract. Under these particular facts, M-F is more than a mere assignee.

The Court agrees with the handling of the claim against the assignee in DeLozier. Section 87A-9-317 would control in the normal case. As has been established, this case requires an exception to the general rule as a result of M-F's representative orally affirming the seller's promises and participating in the sale. Had M-F not taken the assignment under these circumstances, participation in the sale and knowledge of the seller's obligations, the assignee would not be obligated to perform the contract upon the assignor's failure to perform, nor liable for the

- 9 -

assignor's indebtedness arising out of the contract. Had M-F not taken the assignment under these circumstances, section 87A-9-317 would have applied. Brown's recourse would have then been against the assignor for the indebtedness arising out of the contract. This was not the case.

The judgment of the district court is affirmed. The defendant may recover from M-F the value of the trade-in over and above being absolved from making any payment on the contract.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 10 -