595 P.2d 709

ANDERSON & NAFZIGER, a partner-
ship, Plaintiff-Counterdefendant,
Appellant-Cross-Respondent,

v.

G. T. NEWCOMB, INC., an Idaho Corpora-
tion, and Pringle Manufacturing Compa-
ny, a Washington Corporation, Defend-
ants,

and

G. T. Newcomb, Inc., an Idaho Corpora-
tion, Defendant-Counterclaimant,
Respondent-Cross-Appellant.

G. T. NEWCOMB, INC., an Idaho
Corporation, Cross-Claimant,

v.

PRINGLE MANUFACTURING COMPA-
NY, a Washington Corporation,
Cross-Defendant.

No. 12906.

Supreme Court of Idaho.

May 18, 1979.

William A. Parsons of Parsons & Smith, Burley, for appellant-cross-respondent.

Jeffrey A. Strother of Moffatt, Thomas, Barrett & Blanton, Boise, May, May, Sudweeks & Shindurling, Twin Falls, for respondent-cross-appellant.

DONALDSON, Justice.

On February 11, 1974, Anderson & Nafziger (plaintiff-appellant) (buyer) and G. T. Newcomb, Inc. (defendant-respondent) (seller) entered into a written contract whereby buyer ordered three pivots (circular sprinkling systems) from seller. The written agreement contained on its back several broad disclaimers of liability by seller. Buyer alleged that seller orally promised delivery of the pivots by the middle of May 1974. However the written contract gives no designated date for delivery and seller argues that there was no promised delivery date.

Approximately ten days after the original written contract was entered into, buyer claims it telephoned seller and ordered a fourth sprinkler. A purchase order form was written up by seller, however it was never signed by any representative of the buyer.

Because of delays in obtaining gear boxes necessary for the operation of the pivots from the manufacturer, seller did not deliver fully operational sprinklers to buyer by the alleged promised date of May 15. The record is unclear as to when fully operational sprinklers were ever actually installed at the buyer's farm.

Buyer brought this action alleging that as a result of the breach of the alleged agreement to make delivery by May 15, 1974, they suffered $75,000 worth of crop loss. It should be noted that the crop loss of which buyer complains was partially from previously uncultivated land.

Seller moved for summary judgment on the ground that the agreement contained disclaimers of liability by it for any crop loss caused by failure to make proper delivery of the equipment. The trial court granted partial summary judgment in favor of seller dismissing buyer's cause of action based upon the written contract for the three pivots. The trial court based the granting of partial summary judgment solely on the exculpatory clause contained on the back of the signed order form. The clause reads as follows:

It is hereby understood and agreed that all work ordered hereunder is precarious and uncertain in its nature, and all pulling of pumps, reinstalling pumps, repair work, alterations, well work, sand pumping, corrections, or other work herein specified, etc., shall be strictly at the Purchaser's risk. The Seller will not be liable for damage of any kind, particularly including loss or damage for diminuation or failure of crop, shortage of water, inability or failure to supply same, or for diminuation or cessation of water flow; nor shall the Seller be liable for any damages or delays of any kind on account of sticking of pump in the well in any position, either when being pulled out or being reinstated nor shall the Seller be liable for any damages on account of delay in making repairs or installing by virtue of some defect in the well, or by virtue of the well not being in condition to receive the machinery, or by virtue of unforeseen or changing conditions in the well or in or about the premises on which the well is located.

The court did not grant summary judgment as to the fourth pivot because the sales contract evidencing the sale was not signed by either party and the oral agreement between the parties did not refer to liability for crop damage. Buyer appeals from the partial summary judgment dismissing its cause of action based upon the alleged breach of contract by seller in failing to make timely delivery of the three pivots. Seller cross appeals arguing that the trial court should have granted summary judgment as to the fourth pivot because the sales contract was substantially the same as that for the original three pivots. We affirm in part, reverse in part and remand.

I

We find that the trial court erred in granting partial summary judgment in favor of the seller based on the above exculpatory clause.

■ It is a general rule of this state and the majority of American jurisdictions that a party may contract to absolve himself from certain duties and liabilities under a contract subject to certain limitations. *Rawlings v. Layne & Bowler Pump Co.*, 93 Idaho 496, 465 P.2d 107 (1970). However, it is nevertheless well established that courts look with disfavor on such attempts to avoid liability and construe such provisions strictly against the person relying on them, especially when that person is the preparer of the document. *American Automobile Insurance Co. v. Seabord Surety Co.*, 155 Cal. App.2d 192, 318 P.2d 84 (1958); *Talley v. Skelly Oil Company*, 199 Kan. 767, 433 P.2d 425 (1967); *Walker Bank & Trust Company v. First Security Corp.*, 9 Utah 2d 215, 341 P.2d 944 (1959). Clauses which exclude liability must speak clearly and directly to the particular conduct of the defendant which caused the harm at issue. *Valley National Bank v. Tang*, 18 Ariz.App. 40, 499 P.2d 991 (1972); *Missouri Pacific Railroad Co. v. City of Topeka*, 213 Kan. 658, 518 P.2d 372 (1974); *Walker Bank & Trust Co. v. First Security Corp., supra.*

■ Seller contends the clear language of the clause exempts the seller from liability for crop loss. However, such broad exculpatory language should not be isolated from the context of the clause in which it appears. A reading of the total clause indicates that the clause is aimed at limiting the seller's liability for crop loss which is caused by installation or repair work done by seller. It is clear that the express terms of the clause do not speak clearly and directly to the particular acts of the seller which buyer complains of. Buyer's claim for relief is based solely on the failure of the seller to make timely delivery. It would require a strained interpretation to hold that exclusion of liability for crop loss caused by failure to make timely delivery of equipment was contemplated by the language of this clause.

Seller's reliance for support of his position on the cases of *Rawlings v. Layne & Bowler Pump Co., supra,* and *H. J. Wood Co. v. Jevons*, 88 Idaho 377, 400 P.2d 287 (1965), wherein we interpreted a similar clause as excluding liability for crop loss, is

misplaced. Both cases involved causes of action based on negligent repair or installation and as such were within the express language of the clause excluding liability for crop loss. We are not presented with a similar situation in the instant case. We hold that the clause is inapplicable to the present action and therefore the trial court erred in granting summary judgment in reliance thereon.

## II

■ Seller sets forth various alternative grounds for upholding the trial court's granting of summary judgment partially dismissing buyer's claim for relief. This Court has generally held that where an order of a lower court is correct but is based upon an erroneous theory, the order will be affirmed upon the correct theory. *Robison v. Compton*, 97 Idaho 615, 549 P.2d 274 (1976); *Lemmon v. Hardy*, 95 Idaho 778, 519 P.2d 1168 (1974). We therefore review the theories advanced by seller in order to determine if they provide a basis for upholding the trial court's granting of partial summary judgment.

Seller initially argues that since buyer's claim for relief is predicated on the failure of seller to make delivery of the pivots by an agreed upon delivery date it is incumbent on buyer to introduce evidence that establishes such a date. It is the position of seller that the written and signed agreement in question, which contains no representation as to a promised delivery date, is complete on its face, that parol evidence may not be admitted to vary or supplement the terms stated therein, and therefore no breach could have occurred which is provable in a court.

■ The transaction in the instant case clearly involves the sale of goods as defined in I.C. § 28–1–105 and as such is within the scope of the Uniform Commercial Code. I.C. § 28–2–102. Idaho Code § 28–2–202, the relevant code section concerning parole evidence, reads as follows:

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

(a) by course of dealing or usage of trade (section 28–1–205) or by course of performance (section 28–2–208); and

(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

■ This section of the Uniform Commercial Code as adopted in Idaho permits the introduction of parol evidence to explain or supplement through evidence of consistent additional terms, unless the court finds the writing was intended also as a complete and exclusive statement of the terms of the agreement (total integration). *MacGregor v. McReki, Inc.*, 30 Colo.App. 196, 494 P.2d 1297 (1971); *Glenn Dick Equipment Co. v. Galey Construction, Inc.*, 97 Idaho 216, 541 P.2d 1184 (1975); *Massey-Ferguson Credit Corp. v. Brown*, 169 Mont. 396, 547 P.2d 846 (1976). The initial question is whether the evidence concerning the alleged delivery constitutes evidence of "consistent additional terms." In making this determination, we are convinced that the promised delivery date is not contradictory to, nor does it negate, the written agreement the parties entered into and as such would be a "consistent additional term" that would be admissible subject to the proviso that the purchase agreement was not intended as a complete and exclusive statement of the terms of the agreement. *MacGregor v. McReki, Inc., supra; Hicks v. Bush*, 10 N.Y.2d 488, 225 N.Y.S.2d 34, 180 N.E.2d 425 (1962); *Hunt Foods and Industries, Inc. v. Doliner*, 26 A.D.2d 41, 270 N.Y.S.2d 937 (1966).

■ The trial court, however, made no finding on whether the order form was intended as a fully integrated agreement. The trial court is the appropriate forum for

**180**

such a determination and as such the trial court should be given the opportunity on remand to make such a determination. *Port City Construction Co., Inc. v. Henderson*, 48 Ala.App. 639, 266 So.2d 896 (1972); *Hankins v. American Pacific Sales Corp.*, 7 Wash.App. 316, 499 P.2d 214 (1972). In analyzing whether the parties intended the purchase order as a "complete and exclusive statement of the terms of the agreement" the trial court should bear in mind that I.C. § 28–2–202 was intended to liberalize the parol evidence rule and to abolish the presumption that a writing is a total integration. It requires that the court make a definite finding that the parties intended a total integration before consistent additional terms are to be excluded. I.C. § 28–2–202, official comment 3; *Hunt Foods and Industries, Inc. v. Doliner, supra; Symonds v. Alder Restaurant Equipment Co.*, 6 U.C.C. Reporting Service 808 (Okl. 1969).

White and Summers in their treatise on the Uniform Commercial Code give the following guidelines for determining whether an agreement is fully integrated:

. . . The language of 2–202 does not expressly set forth "tests" by which the judge is to determine whether the writing is a complete and exclusive statement of the terms of the contract. Over the years, various courts have devised different tests. One of these is the so-called "four corners" test by which the trial judge simply looks at what is within the four corners of the writing and decides if the writing looks complete. The structure of section 2–202 seems less congenial to this test than earlier versions of the parol evidence rule. As we have noted, the section does not appear to adopt any presumption that the entire agreement is embodied in the writing. Rather, the presumption seems to be that unless proven otherwise, the writing does not include all the terms. . . . Such a test is not only somewhat ostrich-like, but is basically question-begging in character. It elevates what is at best only a general inferential maxim into a rule of law, yet the very question is whether, in the par-

ticular circumstances, the parties actually intended a complete and exclusive written statement of their agreement. A judge alone should be willing to go beyond the four corners and hear other evidence on the issue of completeness and exclusivity.

J. White and R. Summers, Uniform Commercial Code § 2–10 (1972). We agree that the determination under I.C. § 28–2–202 of whether a writing is a complete and exclusive statement of the terms of the agreement should not be confined to a simple scanning of what terms the writing embodies. The trial court should consider not only the language of the agreement but all extrinsic evidence relevant to the issue of whether the parties intended the written agreement to be a complete integration. *Port City Construction Co., Inc. v. Henderson, supra; O'Neil v. International Harvester*, 575 P.2d 862 (Colo. 1978); *Peter Pan Seafoods, Inc. v. Olympic Foundry*, 17 Wash.App. 761, 565 P.2d 819 (1977); *cf. Lakeside Bridge & St. Co. v. Mountain State Const. Co.*, 400 F.Supp. 273 (E.D. Wis. 1975). Our holding does not deprive the clause in the instant case, which alleges the writing is a fully integrated agreement, of all effect. It does however limit the conclusiveness of such merger language. The terms of the writing still have superior probative value but are tempered by the trial court's ability to consider extrinsic evidence of the parties' intentions.

If the integration of the agreement is determined to be total, buyer will be barred from introducing evidence of the alleged promised delivery date. If the integration is incomplete, buyer will be allowed to introduce evidence of the alleged delivery date.

Although under the foregoing analysis buyer might be barred from introducing evidence pertaining to the alleged promised delivery date by seller if the Court finds the writing to be fully integrated, we do not believe this would bar recovery by buyer as a matter of law.

Since the agreement does not specify a delivery date and assuming ar-

guendo that I.C. § 28–2–202 bars admission of any representations as to an orally agreed upon delivery date, we must look to the provisions of the Uniform Commercial Code to supply the missing term. It is well recognized that a contract for the sale of goods will not fail for indefiniteness even though one or more of the terms are left open if the parties intended to make a contract and there is a reasonable certain basis for giving appropriate remedy. I.C. § 28–2–204(3); *Luis Hirsch y Cia S.A. v. Rosenblatt Casing Co.,* 418 F.2d 1300 (2nd Cir. 1969); *Bornstein v. Somerson,* 341 So.2d 1043 (Fla.App. 1977); *Southern Idaho Pipe & Steel Co. v. Cal-Cut Pipe & Supply, Inc.,* 98 Idaho 495, 567 P.2d 1246 (1977). The absence of a specific time for delivery in the instant case does not void the agreement since the language of the purchase agreement manifests an intention to contract, contains all other requisite terms and appears to provide a reasonable certain basis for giving appropriate remedy.

██ Idaho Code § 28–2–309(1) provides that the time for delivery in the absence of an agreed time shall be a reasonable time. *See Jamestown Terminal Elevator, Inc. v. Hieb,* 246 N.W.2d 736 (N.D. 1976); *Southern Idaho Pipe & Steel Co. v. Cal-Cut Pipe & Supply, Inc., supra*; J. White and R. Summers, Uniform Commercial Code § 3–5 (1972). In determining the issue of reasonability, factors such as the nature of the goods to be delivered, the extent of the seller's knowledge of the buyer's intentions, transportation conditions and the nature of the market should be considered. *Southern Idaho Pipe & Steel Co. v. Cal-Cut Pipe & Supply, Inc., supra.* Idaho Code § 28–1–204(2) states the basic principle for interpreting what constitutes "reasonable time" as follows: "What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action."

██ The foregoing analysis when applied to the instant case clearly provides a basis for the trier of fact to determine a reasonable delivery date. Although buyer's claim for relief sounds in breach of contract for failure of seller to meet a promised delivery date, we are persuaded that in a summary judgment situation where pleadings of the opposing party are to be liberally construed, it would be inappropriate at this stage of the proceedings to strictly interpret buyer's complaint to preclude recovery for a claim for relief based on failure of seller to make delivery within a reasonable time.

In summary, buyer may introduce evidence of the alleged promised delivery date unless the trial court determines that the purchase agreement was intended as a complete and exclusive statement of the terms of the agreement. If the trial court determines that the agreement is fully integrated and bars parol evidence of the alleged promised delivery date, buyer may still introduce appropriate evidence to establish a reasonable date for delivery and whether seller met such a date. Since it is conceivable that buyer could establish a breach of contract by seller under one of these theories, summary judgment is not warranted under the alternative theory argued by seller.

██ The next theory put forth by the seller to support the trial court's granting of partial summary judgment is based on the following clause contained in the purchase agreement: "If a specific shipping date is designated on the face hereof, Seller shall not be liable for any delays in filing this order caused by . . . delays in transportation, delays in shipment of merchandise to Seller by its suppliers, acts of God or any other cause beyond the control of Seller."

As we previously stated, buyer could introduce parol evidence as to promised shipping date if the trial court determines that the written purchase agreement was not intended as a complete and exclusive statement of the terms. Notwithstanding the trial court's determination of whether the agreement was intended as a fully integrated contract, buyer will be allowed to introduce evidence to establish a reasonable date for delivery. Therefore, the primary question presented is whether the above exculpatory clause precludes liability on the part

of the respondent for failure to meet either an orally agreed upon delivery date or a reasonable date inferred from the circumstances surrounding the agreement. We are of the opinion that it does preclude such liability if the reason for delay falls within the causes enumerated within the provision.

Although the term "designated on the face hereof" is used in the beginning of the provision we are not persuaded that the clause's applicability should be limited to a situation where a delivery date is in fact actually written on the front of the agreement. The clear intent of the provision is to limit seller's liability for failure to meet a delivery date which is a part of the contract. Under our prior discussion, it is evident that some delivery date will be incorporated as part of the agreement either by parol evidence or inferred from circumstances surrounding the transaction. It would be inconsistent to allow buyer to incorporate as part of the agreement an orally agreed upon delivery date or a reasonable delivery date while denying the seller the opportunity to assert as a defense a clause which limits his liability for failure to meet the contract's delivery date.

Whether the delivery date is made part of the agreement by designation, parol evidence or inferred from the circumstances should make no difference to the application of the clause. The clear intent of the language of the clause is that seller's liability for failure to meet the contract's delivery date is limited to matters within its own control.

We hold that seller may assert the above clause as a defense to his possible liability for the alleged belated delivery. It is however incumbent upon seller, in order to preclude its liability, to prove that the cause for the alleged belated delivery is contained in the reasons enumerated in the provision. Seller asserts that the alleged belated delivery was caused by delays in shipment by its supplier and therefore is covered by the language of the clause. The record before us supports seller's assertion as to the cause for delay but we are concerned by the fact that the factual contentions of the supplier,

Pringle Manufacturing Company, are not contained in the record on appeal.

Further, since the issue as to the reason for the alleged delayed delivery was not decided below and is critical to buyer's claim of relief against the supplier which is not the subject of this appeal, it would not be appropriate for us to make a summary judgment determination on appeal as to the cause for the alleged delay based on what appears to be an incomplete record before us. Upon remand the parties may submit further summary judgment proceedings regarding whether issues of fact may remain as to the actual cause for the alleged belated delivery and therefore whether the above exculpatory provision is applicable. The trial court's granting of partial summary judgment cannot at this stage be upheld on the basis of the instant clause.

On remand the trial court should determine if the cause for delay falls within the express language of the above provision and, if so, partial summary judgment in favor of the seller would be appropriate to the extent of the claims for relief grounded on the three written agreements.

■ The final alternative ground advanced by seller for upholding the trial court's granting of partial summary judgment is that the damages alleged by buyer are, as a matter of law, too uncertain and speculative to form a basis for recovery. Seller argues that the rule barring evidence of damages for lost prospective profits from a business which is not yet established but one merely contemplated should apply in the instant case where buyer's alleged damages are for lost crops from land, a substantial portion of which had not been previously cultivated. *H. J. Wood Co. v. Jevons,* 88 Idaho 377, 400 P.2d 287 (1965); *C. R. Crowley, Inc. v. Soelberg,* 81 Idaho 480, 346 P.2d 1063 (1960); *Head v. Crone,* 76 Idaho 196, 279 P.2d 1064 (1955).

■ The record, however, does not support seller's contention that buyer's alleged damages are totally based on speculation, guess or conjecture. Damages need be proved only with a reasonable certainty and

courts have determined this simply means that existence of damages must be taken out of the realm of speculation. *Big Butte Ranch, Inc. v. Grasmick*, 91 Idaho 6, 415 P.2d 38 (1966). Since there are genuine issues of material fact concerning the issue of damages, we cannot hold as a matter of law that buyer's damages for lost crops are too uncertain and speculative to form any basis for recovery. Summary judgment is therefore not appropriate on this ground.

Since none of the alternative theories advanced by the seller provide a basis for upholding the trial court's order granting partial summary judgment, we reverse and remand as to that portion of the trial court's determination.

### III

Concerning the assignment of error on cross appeal, seller contends that the terms of the oral agreement for the purchase of the fourth sprinkler pivot were identical to the terms contained in the written agreement covering the purchase of the initial three pivots. Therefore, seller argues that if summary judgment dismissing buyer's cause of action based on the written agreement for the first three pivots was correct, then summary judgment was also appropriate as to the cause of action based on the oral contract.

In light of the above, our foregoing ruling that the trial court erred in granting partial summary judgment in favor of seller pursuant to the terms of the written agreement, it is clear that summary judgment would also be inappropriate with respect to the oral purchase agreement. Further, we are of the opinion that the trial court correctly determined that there were genuine issues of material fact as to what the actual terms of the oral purchase agreement were and consistent with such determination properly denied seller's motion for summary judgment with respect to that part of the cause of action based on the oral purchase agreement. Seller's assignment of error on cross appeal is therefore without merit.

Judgment affirmed in part, reversed in part and remanded.

BAKES and BISTLINE, JJ., and DUNLAP, J., Pro Tem., concur.

SHEPARD, C. J., concurs in result.