**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 24 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

In re: JOSEPH STANLEY VISSER;
APRIL MCGOVERN VISSER,

Debtors,

------------------------------

 TWIN FALLS STAFFING, LLC; TOM
WELSTAD,

Plaintiffs-Appellees,

v.

JOSEPH STANLEY VISSER; APRIL
MCGOVERN VISSER,

Defendants-Appellants.

No. 14-35424

D.C. No. 1:13-cv-00408-BLW

MEMORANDUM[*]

In re: JOSEPH STANLEY VISSER;
APRIL MCGOVERN VISSER,

Debtors,

------------------------------

TWIN FALLS STAFFING, LLC; TOM

No. 14-35425

D.C. No. 1:13-cv-00408-BLW

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

WELSTAD,

        Plaintiffs-Appellants,

v.

JOSEPH STANLEY VISSER; APRIL
MCGOVERN VISSER,

        Defendants-Appellees.

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief Judge, Presiding

Argued and Submitted October 6, 2016
Seattle, Washington

Before:  W. FLETCHER, FISHER, and N.R. SMITH, Circuit Judges.

All parties, Twin Falls Staffing, LLC, and Tom Welstad (Plaintiffs), and Joseph and April Visser (Defendants), appeal the district court's memorandum decision.  We affirm.

1.  Twin Falls Staffing incurred $128,151.55 in attorney's fees to obtain an injunction against Joseph Visser in Idaho state court.  Before a trial could be held in state court, Joseph Visser filed for bankruptcy and forced Twin Falls Staffing to pursue this action in federal bankruptcy court.  At the bankruptcy court trial, Twin Falls Staffing included the $128,151.55 in state court attorney's fees in its request

for damages. The bankruptcy court then awarded Twin Falls Staffing these requested fees as damages.

Idaho follows the "American Rule," which permits courts to award attorney's fees when "they are authorized by statute or contract." *Hellar v. Cenarrusa*, 682 P.2d 524, 531 (Idaho 1984). Although on appeal Twin Falls Staffing has now identified a statute under which it would be entitled to attorney's fees, separate and apart from an award of damages, *see* Idaho Code Ann. § 12-120(3), it has not identified a contract or statute that would permit it to recover attorney's fees *as damages*. Therefore, the bankruptcy court erred in awarding—as damages—the state court attorney's fees Twin Falls Staffing incurred at a prior stage in this litigation.

2. Under 11 U.S.C. § 523(a)(6), "an individual debtor may not discharge a debt 'for willful *and* malicious injury by the debtor to another entity or to the property of another entity.'" *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 706 (9th Cir. 2008) (quoting 11 U.S.C. § 523(a)(6)). The bankruptcy court did not clearly err in finding that Joseph Visser willfully and maliciously injured Twin Falls Staffing. Based on this finding, the bankruptcy court properly concluded that the damages Twin Falls Staffing suffered as a direct result of

3

Joseph Visser's willful and malicious actions were non-dischargeable in bankruptcy.

The evidence presented at trial showed that when Joseph Visser began working for Twin Falls Staffing in 2003, he signed an employment contract that contained a non-competition clause. Stanley Visser, Joseph Visser's father, was responsible for administering Twin Falls Staffing's employment contracts. In late 2008 or early 2009, Stanley Visser intentionally eliminated the non-competition clause from Twin Falls Staffing's standard employment contract. Joseph Visser signed this new contract in 2009—and had several other Twin Falls Staffing employees sign the contract—so that they could leave Twin Falls Staffing and immediately join a competing business without incurring liability. While he was still employed by Twin Falls Staffing, Joseph Visser took all the necessary steps to set up Magic Valley Staffing, a competing business. In late October 2009, he left suddenly and without notice, taking all of Twin Falls Staffing's permanent employees with him, and leaving no one to run the business. Magic Valley Staffing took advantage of Twin Falls Staffing's temporary inability to operate and stole most of its major clients and temporary workers. The cumulative effect of these actions severely damaged Twin Falls Staffing. In light of the evidence, we cannot reverse the bankruptcy court's factual finding. *See Husain v. Olympic*

4

*Airways*, 316 F.3d 829, 835 (9th Cir. 2002) ("[I]f the district court's findings are plausible in light of the record viewed in its entirety, the appellate court cannot reverse even if it is convinced it would have found differently.").

3. It is not clear from Ninth Circuit precedent whether we should give deference to the bankruptcy court under an abuse of discretion standard or a clear error standard in its award of damages. However, applying either standard, we affirm the bankruptcy court's award of $230,000 in lost net revenue.

In Idaho, the proper "measure of damages for the breach of an anti-competition clause is the amount that the plaintiff lost by reason of the breach." *Trilogy Network Sys., Inc. v. Johnson*, 172 P.3d 1119, 1121 (Idaho 2007). However, the amount of lost profits is generally difficult to prove accurately, so the law does not require the plaintiff to prove this type of damages with "mathematical certainty." *Id.* (quoting *Vancil v. Anderson*, 227 P.2d 74, 80 (Idaho 1951)). Rather, plaintiff need only demonstrate the amount of lost profits with "'reasonable certainty[,]' and this means 'that [the] existence of damages must be taken out of the realm of speculation.'" *Id.* (alterations in original) (quoting *Anderson & Nafziger v. G.T. Newcomb, Inc.*, 595 P.2d 709, 716–17 (Idaho 1979)).

Twin Falls Staffing proved its lost profits at trial by presenting profit-and-loss statements for the years just before and just after Visser left and started Magic

5

Valley Staffing. Visser stipulated to the admission of these documents at trial without any reservations or limitations. These documents demonstrated that Twin Falls Staffing suffered a net loss of around $470,000 in the year following Visser's departure. However, the bankruptcy court only awarded Twin Falls Staffing $230,000 in lost profits. Based on the evidence presented at trial, the bankruptcy court concluded that not all of the losses Twin Falls Staffing suffered in the year following Visser's departure could be attributed to Visser's breach of his contract. The bankruptcy court neither abused its discretion nor clearly erred in determining that Twin Falls Staffing demonstrated its lost profits with reasonable certainty.

**AFFIRMED.**